Robinson, J.
 

 These cases involve the interpretation of the provision of Section 5332, General Code:
 

 “A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person, institution or corporation, in the following cases: * * *
 

 “3. When the succession is to property from a resident, * * * by deed, grant, sale, assignment or gift, made without a valuable consideration substantially equivalent in money or money’s worth to the full value of such property:
 

 “(a) In contemplation of the death of the grantor * *
 

 Also, the provision of Section 5332-2, General Code:
 

 “Any transfer of property from a resident, * * * if shown to have been made without a valuable consideration substantially equivalent in money or money’s worth to the full value of such property, if so made within two years prior to
 
 *217
 
 the death of the transferor, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.”
 

 Also, the provision of Section 5331, General Code:
 

 “ ‘Contemplation of death’ means that the expectation of death which actuates the mind of a person on the execution of his will.”
 

 It appears, upon an examination of the original and enrolled act, as filed in the office of the secretary of state, that the word “the” between the words “that” and “expectation” does not appear therein.
 

 “Where there is a discrepancy between the printed statute and the enrolled act, all the authorities agree that the latter controls.” 1 Lewis’ Sutherland Statutory Construction (2d Ed.), Section 74.
 

 In the case of
 
 State
 
 v.
 
 Groves,
 
 80 Ohio St., 351 88 N. E., 1096, 17 Ann. Cas., 361, this court declared:
 

 “Where there is a variance or repugnancy in terms, between the printed copy of a statute published under the authority of the state, and the original enrolled act signed by the presiding officers of the two houses of the General Assembly, approved by the Governor, and deposited with the secretary of state, the latter controls.”
 

 That portion, then, of Section 5331, General Code, correctly reads:
 

 “ ‘Contemplation of death’ means that expectation of death which actuates the mind of a person on the execution of his will.”
 

 
 *218
 

 “A
 
 will is commonly defined as any instrument executed with the formalities of law, whereby a person makes a disposition of his property to take effect after his death.” 28 Ruling Case Law, 58, Section 2.
 

 “A will is a disposition of property to take effect on or after the death of the owner.” 40 Cyc., 995.
 

 “A written instrument, legally executed, by which a man makes disposition of his estate, to take effect after his death.” Webster.
 

 On December 2, 1923, F. E. Myers died. Prior to his death he had made distribution to his children and the wife of one and the husbands of the other two, as follows:
 

 (1) Securities given under irrevocable trust agreement, dated December 22, 1921, for the benefit of his three children equally, appraised at ________________________________________________________ $1,238,188.96
 

 (2) Shares of the common stock of the F. E. Myers & Bro. Company, given on January 12, 1923, 2,700 shares to his three children equally ; 100 shares to Alice Mould Myers, wife of John C. Myers; 100 shares to T. W. Miller, husband of Helen Myers Miller; 100 shares to Frederick L. Parker, husband of Mary Myers Parker, appraised at a total of ________________________________________ 600,000.00
 

 (3) A parcel of real estate at the corner of Euclid avenue and Fourth street, in Cleveland, deeded to his three children equally, on May 14, 1923, appraised at ________________________ 420,000.00
 

 
 *219
 
 (4) Securities given to his three children on August 24, 1923: To Mary Myers Parker, of the appraised value of ____________________________ 1,007,763.16
 

 To John C. Myers, of the appraised value of ______________________________________ 1,007,561.85
 

 To Helen Myers Miller, of the appraised value of 1,007,626.28
 

 Total appraised value of gifts ____ $5,281,140.25
 

 The probate court of Ashland county computed the succession tax upon the total appraised value of all the gifts. Upon appeal, the court of common pleas eliminated the gifts herein classified as 1 and 2. The Court of Appeals, upon error, reversed the order of the court of common pleas as to the gifts herein classified as 3, and affirmed the tax upon the gifts herein classified as 4.
 

 In the probate court much evidence was received in behalf of the donees. Such evidence disclosed that F. E. Myers was of the age of 74 years at the time of his death; that, while he was able to and did give actual and personal attention to his business up to approximately the date of his death, he had been in failing health for a number of years; that he was suffering from a cancer, but that he did not know until shortly prior to his death that it was such, but did know that he had a painful, troublesome lump in his side; that up to a few days prior to his death he had no expectation of immediate death; that at the time of his death he had a large estate undisposed of; that upon the date of the gift described in classification 1 herein,
 
 *220
 
 which was an irrevocable trust to the Union Trust Company of Cleveland, Ohio, providing for the payment of the net income derived from the trust estate, share and share alike, to Alesta S. Myers, wife of F. E. Myers, and to John C. Myers, Mary Myers Parker, and Helen Myers Miller, his three children, and at the expiration of three years from its date three-fourths of the trust fund to be paid, share and share alike, to his three children, the remaining one-fourth of the trust fund to be paid, share and share alike, to his three children upon the death of Alesta S. Myers, his wife. At the time of the bestowal of this gift, F. E. Myers made the statement to his children:
 

 “I think you children are old enough now that if you haven’t sense to take care of this, you never will have, and I would enjoy seeing you have these things while I am with you.”
 

 At the same time and in the same conversation, as testified to by Mary Myers Parker:
 

 “He said it was the beginning of what he wanted to do for us.”
 

 The question here presented is whether the gifts by the decedent to his three children, and the wife of the one and the husbands of the two, were given “in contemplation of the death of the grantor.” Subdivision (a) of division 3 of Section 5332, General Code.
 

 The succession tax statutes of Ohio were largely copied from the succession tax statutes of the state of New York. In that state its court of last resort has construed the phrase, “in contemplation of death,” as referring to impending death—death from some existing condition of the body, furnish
 
 *221
 
 ing a motive without which the conveyance would not be made—the immediate moving cause of the transfer, as distinguished from the general knowledge of all mankind that they must some time die. Many authorities to the same effect are cited by counsel from the courts of other states having the same or a similar provision.
 

 While it is a general rule that where one state adapts a statute, copied, or substantially copied, from another state, it adopts therewith the construction given by such state to such statute prior to its adoption by the copying state, nevertheless the state adopting a statute from another state is not obliged to adopt such construction, but may either expressly adopt such construction, repudiate such construction, or remain silent upon the subject ; and it is only when it remains silent upon the subject that the general rule applies.
 

 The Legislature of Ohio, evidently not satisfied with the construction of the phrase “in contemplation of death” as made by the state of New York and other states, by specific enactment gave to that phrase a definition of its own, which definition is not found in the New York statute. The definition of that phrase by the Legislature, found in Section 5331, General Code, as enacted, is “that expectation of death which actuates the mind of a person on the execution of his will.”
 

 The primary purpose of a person executing a will is to distribute his property; and it is the exception rather than the rule that the minds oí men are actuated to make a will because of a soase of impending death. In general, men make wills at a time when they assume additional moral obliga
 
 *222
 
 tions or additional moral obligations are cast upon them, and the mind is actuated to make-provision by way of distribution of property after death because of those obligations.
 

 The significant thing about the gifts in question here is that they are gifts to his own children, in equal proportions, and to his sons-in-law and daughter-in-law in equal proportions, and the fact that at the time of making the first gift he, in effect, stated to his children that he thought they now had reached the stage when they would as wisely and as judiciously handle the property distributed to them as they ever would; but, even then, he deferred the full enjoyment of the first gift for a period of three years; and stated to them that this was only the beginning, and that he wished to have the pleasure of seeing them enjoy his property while he lived.
 

 While the distribution was in every sense a gift, yet it was not in the nature of an act of generosity, of relieving a need, conferring a favor, the expression of appreciation or of a preference.
 

 We are unable to follow either the Court of Appeals or the court of common pleas in the distinction made between the several gifts. If based upon the theory that the decedent knew at the time of making the gift herein classified as No. 4 that he was afflicted with a fatal malady, and was about to die, the record does not support such a conclusion. He, of course, knew at the time of making each of the gifts that he had reached the age when he might expect to die soon. The record discloses that he was in failing health during all that period, and we do not think it important whether he knew
 
 *223
 
 the nature of his ailment or not; nor do we think the realization that he was soon to die controlling in determining whether the gift was made in contemplation of death. While we regard the evidence upon that subject as competent and entitled to be considered in connection with other facts, we are of the opinion that the controlling fact in determining whether a gift is made in contemplation of death is whether the gift was in the nature of a distribution of property rather than the bestowal of a favor upon the donee.
 

 We are of the opinion that the same process of reasoning which would exempt the gifts under the classifications 1 and 2, or 1, 2 and 3, would exempt the gifts under the classification 4. In other words, all the gifts enumerated were exempt, or none was exempt. All the gifts were made within the two years preceding the date of the donor’s death; all were without a valuable consideration. The burden by statute was cast upon the donees to show that the gifts within that period were not made in contemplation of death. We are of opinion that they did not sustain such burden. On the contrary, the record discloses that the property was transferred without a valuable consideration; - that it was upon the part of the donor the beginning of a systematic distribution of property, such a distribution of property as a person would make by will, and had for its purpose such purpose as would actuate the mind of a person making a will; that the evidence of statements made by the donor indicate such purpose; that the gifts made subsequent to such statements appear to have been made in pursuance of such purpose, and that this dis
 
 *224
 
 tribution of Ms property in advance of Ms demise was a distribution in the manner he would have it distributed after death, and that the outstanding purpose of the donor was to distribute his property.
 

 We find no constitutional inhibition to the Legislature imposing upon the donee the burden of showing that the gifts were not made in contemplation of death, nor do we find any merit in the contention that a separate exemption should be allowed upon each installment of distribution or gift.
 

 We find no error .in the manner in which the lower courts determined the value of the real estate in the city of Cleveland.
 

 The judgment of the Court of Appeals, in so far as it exempts the gifts under the classifications 1, 2, and 3, is reversed, and affirmed as to classification 4.
 

 The judgment of the court of common pleas, in so far as it exempts the gifts under classifications 1 and 2, is reversed, and affirmed as to classifications 3 and 4.
 

 Judgment of the Court of Appeals and of the Common pleas court affirmed in part and reversed in part. Judgment of the probate court affirmed.
 

 Marshall, C. J., Allen and Matthias, JJ., concur.
 

 Day, Kinkade and Jones, JJ., dissent.