**BENDER, ESTATE OF, In Re**

Ohio Appeals, 1st Dist, Hamilton Co

No 5460.   Decided July 5, 1938

Bettinger, Schmitt & Kreis, Cincinnati, for appellants.

Herbert S. Duffy, Columbus, and Wm. H. Middleton, Jr., Waverly, for the Tax Commission.

## OPINION

By MATTHEWS, J.

This is an appeal on questions of law from the Court of Common Pleas of Hamilton County. The case originated in the Probate Court, which made an order fixing the inheritance tax upon the testator's estate upon a total valuation obtained by the inclusion of certain gifts by the testator during his lifetime to his children.

The testator died on November 18th, 1936, leaving a will which he had executed on October 21st, 1933. The value of his estate as fixed by the court for purposes of taxation exclusive of the gifts was approximately $200,000.00.

The gifts which were included in the total valuation for taxation purposes were to the children and on the dates following:

(a) The gift to Arthur Bender on or about August 1, 1929.

(b) The gift to Erma Trame on or about November 5, 1926.

(c) The gift to Lillian F. Partridge on or about March 29, 1929.

(d) The gift to Charles S. Bender on or about April 22, 1931.

(e) The gift to Harry C. Bender during the year 1931.

The only additional information concerning the circumstances surrounding the making of the gifts is furnished by the recitals in Item X of the testator's will which is as follows:

"I have from time to time made advancements to my children, as follows, to-wit: To my son, Arthur, an advancement of eight thousand ($8,000.00) dollars which I gave him when he purchased his home situated on Sunset Avenue, Cincinnati, Ohio; to my daughter, Erma Trame, an advancement of thirteen thousand five hundred ($13,500.00) dollars, when she purchased her home on Cleves and Warsaw Pike, Cincinnati, Ohio; to my daughter, Lillian F. Partridge, an advancement of ten thousand ($10,000.00) dollars when she purchased her home on Glenway Avenue, Cincinnati, Ohio; to my son, Charles S. Bender, an advancement of six thousand ($6,000 00) dollars when he purchased his home on Omena Place, Cincinnati, Ohio; to my son, Harry C. Bender, five thousand ($5,000.00) dollars in Liberty Loan Bonds about two years prior to the date of the execution of this will, and I now direct that all of such gifts and advances shall be considered as advancements and shall by my executors hereinafter named, be charged against the share of each of said children to whom such advancements have been made, and shall be deducted from the legacies and bequests hereinbefore given to them, respectively, but I direct that none of my said children to whom I have made such advancements shall be charged with interest thereon. All other advancements to my children or my sisters are hereby forgiven."

The record contains no information concerning the "other advancements" mentioned by the testator. No effort was made to bring them into the estate for inheritance tax purposes.

Whether these gifts of advancements specifically mentioned by the testator are subject to the inheritance tax depends upon a proper application of §§5331 and 5332, GC. The applicable parts of these sections are:

**Sec 5331, paragraph 6, GC.**

"'Contemplation of death' means that expectation of death which actuates the mind of a person on the execution of his will."

**Sec. 5332 GC.**

"A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person, institution or corporation, in the following cases:

"3. When the succession is to property from a resident, or to property within this state from a nonresident, by deed, grant, sale, assignment or gift, made without a valuable consideration substantially equivalent in money or money's worth to the full value of such property:

(a) In contemplation of the death of the grantor, vendor, assignor, or donor, or

(b) Intended to take effect in possession or enjoyment at or after such death."

It should, perhaps, also be mentioned that by §5332-2, GC, it is provided that transfers without consideration within two years of the transferor's death are, "unless shown to the contrary, deemed to have been made in contemplation of death within the meaning of this title." As these gifts were made much longer than two years prior to the testator's death, this section has no application.

The burden of proof rested upon the state to prove that these gifts were subject to the inheritance tax and it was not

aided by any presumption of taxability imposed by law. To sustain that burden, it was necessary for it to produce some evidence that these gifts were made in contemplation of death, as that phrase is defined by §5331, GC, that is, that the donor was actuated by "that expectation of death which actuates the mind of a person on the execution of his will."

In support of its contention that these transfers were taxable, the Tax Commission of Ohio relied chiefly upon **Tax Commission v Parker, 117 Oh St 215**, and the Common Pleas Court likewise gave great weight to that case. The Common Pleas Court also placed considerable stress upon Chambers v Larronde, 41 A.L.R. (Cal.) 980.

Now, Tax Commission v Parker, supra, involved a transfer within two years of the donor's death, which, of course, was burdened from the beginning with the presumption that it had been made in contemplation of death. However, the court was required to, and did construe §§5331 and 5332, GC, and its conclusion on their meaning is summarized in paragraph 4 of the syllabus, which we quote:

"The controlling fact in determining whether a transferor made the transfer of property in contemplation of death is whether the purpose of the transferor was to distribute or partially distribute his estate, or was simply to do an act of generosity or kindness."

Now the evidence in the case shows that the donor was 74 years old at the time of his death, that he had been in failing health for many years, and that these gifts aggregated more than five million dollars, that these gifts were in equal shares to his children and his children in law, and that at the time he made these gifts he told them he thought they had reached the age they could judiciously handle the property, that it was only the beginning and that he wished to have the pleasure of seeing them enjoy the property while he lived. this evidence was introduced by the donees to show exemption from taxation—not by the state to show taxability. In deciding the case, the court said at page 223:

"The burden by statute was cast upon the donees to show that the gifts within that period were not made in contemplation of death. We are of opinion that they did not sustain such burden."

In the case at bar, the burden of proof is on the state. It devolved upon it to produce evidence to bring the ▮▮▮▮▮ ▮ gifts within the provisions of the statute. No evidence, such as was introduced in Tax Commission v Parker was presented in this case. No evidence contemporaneous with the gifts was introduced. We get only a glimpse of the situation then existing by statement of the donor made in his will more than two years after the last gift, and inferences to be drawn from data disclosed in the administration of his estate. In this way, we find that the donor had these five children by a former marriage and that the children had reached maturity that he had accumulated an estate of about $250,000.00, and was still actively engaged in the commission business. There is no evidence indicating the state of his health or his exact age He had remarried in 1925. No direct evidence as to his reasons for making these gifts is disclosed. His own recitals in his will indicated that in four of the five instances, the gifts were not to arrange the donor's affairs, but were to enable his children to purchase homes. At least that is the inference. The record does not show any reason for the gift of $5,000.00 to his son, Harry C. Bender. The evidence does show that there was no uniformity in the amount of the gifts, and that no two of them were made at the same time, the first gift having been made in 1926 and the last in 1931. The gifts totaled less than one-fifth of the estate.

Now, does this evidence tend to in any way prove that in making these isolated gifts to his children the donor had "the purpose—to distribute or partially distribute his estate," or, in the alternative, does it show a purpose "simply to do an act of generosity or kindness"? We are of opinion that the latter is the true inference to be drawn. Certainly, he had no intention to evade the inheritance tax. With equal certainty it can be said that he did not intend thereby to avoid the trouble and expense of an administration upon his estate. Notwithstanding these gifts, a large estate remained subject to taxes and administration.

Unless it can be said that every advancement comes within the meaning of the phrase "In contemplation of death" there is no evidence to support the imposition of this tax. That an advancement is not necessarily in contemplation of death seems clear. It may be made, and, perhaps, frequently is, upon the importunity of a child

and to save the child from an impending calamity, or to open the door to a great opportunity.

Could it be claimed that such a gift is made in contemplation of death, should the donor say then or afterwards that should he die intestate and his estate came to be formally distributed he expected his bounty in life and upon his death to be equal among his children? Would not scuh a gift be an act of generosity, or for the purpose of relieving a need, or conferring a favor or the expression of appreciation or of a preference, rather than a purpose on the part of the donor to distribute or partially distribute his estate?

In the case of Chambers v Larronde, supra, which is cited in support of the taxability of these gifts the court quotes this with approval from Spreckels v State, 30 Cal. App. 363:—

"It is only when contemplation of death is the motive without which the conveyance would not be made that a transfer may be subjected to the tax. That is, the expectation of death must be the direct, specific and immediate animating cause of the transfer."

We reach the conclusion that assuming that the recitals of the will may be used as evidence of advancements, still the state has failed to prove that these gifts were made in contemplation of death within the meaning of §§5331 and 5332, GC.

Now, of course, a beneficiary under a will, for the purpose of augmenting his testamentary portion, cannot dispute the testator's statement that he has received an advancement, which should be deducted. Regardless of whether it was true or false, the testator had a perfect right to reduce the amount any one should receive under the will by any sum he saw fit to name. Whether the sum named had been advanced or not, the testator intended the named beneficiary to receive just that much less. But does this same reasoning apply to recitals in a will that impose a burden or liability upon a beneficiary? Of course, a testator could impose a condition which a beneficiary would be obliged to perform before he could take the benefit, but the testator in this case had no intention to attach a condition to the bequests to his children. What is sought here is to fasten a liability for taxes because of a term, of ambiguous meaning, used by the testator to describe a transaction that took place years before. While the statement of the testator was incorporated in a formal document, still it is an unsworn statement by a person not subject to cross-examinataion. Without passing upon the competency of the evidence, we hold that it is not proof in any degree that these transfers were made in contemplation of death.

For these reasons the court finds these gifts should not be included in computing the inheritance tax.

The judgment is reversed and the cause remanded to the Court of Common Pleas with instructions to certify to the Probate Court a transcript of the proceedings and judgment herein.

ROSS, PJ, and HAMILTON, J, concur.