Matthias, J.
 

 A single question is presented in this case: Were the 300 shares of stock in The William Powell Company transferred in contemplation of death within the meaning of Sections 5331 and 5332, General Code?
 

 Section 5332, General Code, provides' as follows:
 

 “A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person, institution or corporation, in the following cases:
 

 “1. When the succession is by will or by the intestate laws of this state from a person who was a resident of this state at the time of his death. # * *
 

 “3. When the succession is to property from a resident, or to property within this state from a nonresi
 
 *59
 
 dent, by deed, grant, sale, assignment or gift, made without a valuable consideration substantially equivalent in money or money’s worth to the full value of such property:
 

 • “(a) In contemplation of the death of the grantor, vendor, assignor, or donor, or
 

 “(b) Intended to take effect in possession or enjoyment at or after such death. * *
 
 *”
 

 Section 5331, General Code, paragraph 5, defines the phrase “contemplation of death” as follows:
 

 “ ‘Contemplation of death’ means that expectation of death which actuates the mind of a person on the execution of his will.”
 

 Section 5332-2, General Code, provides that:
 

 “Any transfer of property from a resident or of property within this state from a nonresident, if shown to have been made without a valuable consideration substantially equivalent in money or money’s worth to the full value of such property, if so made within two years prior to the death of the transferor, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title. It shall be the duty of the persons by whom the application for determination of tax is filed to set forth in detail therein a list of all such transfers. If no such transfers have been made such fact shall be stated.” Since all of the gifts in question were made more than two years prior to the death of Mrs. Alice B. Robinson, there is .no presumption that they were made in contemplation of death. The Department of Taxation, therefore, was obliged to assume the burden of proving that the transfers were in fact made in “contemplation of death.”
 

 In its case the Department of Taxation offered no oral testimony, but only certain written exhibits, namely:
 

 
 *60
 
 (a) Application of the executrix for the determination of the inheritance tax.
 

 (b) Motion of the Department of Taxation for an auditor’s appraisal as provided by Section 5341, General Code.
 

 (c) Order of Probate Court directing county auditor to appraise, and return of county auditor thereto.
 

 (d) Order of Probate Court, entered June 29, 1940, determining the inheritance tax.
 

 (e) Copy of will of Alice B. Robinson the decedent donor.
 

 Thereupon the department rested its case and the executrix filed two motions for the dismissal of the exceptions. The first motion was directed to the exceptions based upon and relating to that part of the order of the Probate Court which exempted from inheritance tax the 200 shares of stock of The William Powell Company, transferred by the decedent in the year 1932. The second motion was based upon the exceptions to the part of the order which exempted from inheritance tax the 100 shares of stock transferred by the decedent in the year 1935. Both motions were argued to the court and thereafter the court reserved its ruling on the motions until the evidence had been presented in the case, stating that the executrix might go forward with her evidence without prejudice to her right to claim the benefit of the motions if upon consideration thereof the court found them or either of them well taken. The case thereupon proceeded and the executrix offered her evidence.
 

 At the end of all the evidence these motions were renewed and, upon decision of the case by the Probate Court, both the motions made at the conclusion of the plaintiff’s case and those made at the conclusion of all the evidence were overruled.
 

 The Court of Appeals entertained the view, as shown
 
 *61
 
 ill its opinion, tliat when the Department of Taxation rested its case it had not made a
 
 prima facie
 
 case, and that there was nothing in the written exhibits, considered separately or together, tending to prove that the purpose of the decedent in making any of the gifts was not simply to do an act of generosity or kindness, as distinguished from a purpose to distribute or partially distribute her estate. However, the Court of Appeals concluded that the introduction of evidence on her behalf by the executrix was wholly inconsistent with the position of reliance on the motions made and, therefore, constituted a waiver of such right to rely upon the motions made at the end of the exceptor’s case.
 

 It is well settled in Ohio that if the motion of the defendant, made at the conclusion of the plaintiff’s evidence for a nonsuit or for a directed verdict in his favor, is overruled, the defendant then has an election either lo stand on the exception to the ruling on his motion or to proceed with his defense. If he accepts the ruling, however erroneous it may be, and proceeds with his defense, introducing evidence in his own behalf, he thereby waives his right to rely upon that motion. 39 Ohio Jurisprudence, 872, Section 216.
 

 The principle above stated is applicable to this case and, although the motion was not overruled by the court, the effect of the reservation of the ruling upon (he motion until after all the evidence was heard was for all purposes an overruling of the motion though it was timely made. The case therefore was before the Probate Court and the Court of Appeals on the entire record.
 

 The facts were not controverted and, therefore, the single question presented is whether, as a matter of law, these transfers were made in contemplation of death.
 

 
 *62
 
 The rule of law to be applied in determining whether these gifts were made in “contemplation of death” has been declared by this court in the case of
 
 Tax Commission
 
 v. Parker, 117 Ohio St., 215, 158 N. E., 89. Paragraph four of the syllabus of that case reads as follows :
 

 “The controlling fact in determining whether a transferor made the transfer of property in contemplation of death is whether the purpose of the transferor was to distribute or partially distribute his estate, or was simply to do an act of generosity or kindness.”
 

 The evidence, as found by the Probate Court in its opinion, clearly shows that Mrs. Robinson, over a period of years, had made generous gifts to her children. The Probate Court found, as stated in its opinion:
 

 “In 1926, she paid off a mortgage on the home of her daughter of $7,000 and the same year gave her son, James, $7,000. In 1927, she gave her daughter, Helen Kraus, $2,468.88 and her.son $2,748.50. She gave to her daughter prior to 1932, a monthly allowance of $200 and to her son a lesser amount of $125, I believe, because James was getting a salary of about $5,000 a year from The William Powell Company.’’’
 

 Prior and subsequent to 1932, Mrs. Robinson made presents to her grandchildren and paid for their education. These gifts to her son and daughter and their children were in substantial amounts and continued up to the time of her death.
 

 In the discussion of motives prompting the disposition of property, the following statement of Chief Justice Hughes in the case of
 
 United States
 
 v.
 
 Wells et al., Exrs.,
 
 283 U. S., 102, 75 L. Ed., 867, 51 S. Ct., 446, is pertinent here:
 

 “ * * * The purposes which may be served by gifts are of great variety. It is common knowledge that a
 
 *63
 
 frequent inducement is, not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor’s bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may he the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death.”
 

 Referring to the several gifts of stock made in 1932 and 1935, the circumstances surrounding each gift must be considered separately to determine whether they were “in contemplation of death.” The evidence shows that in 1932, Helen Robinson Kraus, the daughter of the donor, had very little income because of the condition of business at that time. The donor’s son, James Robinson, was employed by The William Powell Company on a substantial salary. The reasons given by Mrs. Robinson at the time she made the gift of shares of stock were that she had more income than she needed and she wanted her children to maintain their same standard of living throughout the depression years, which they could not do without her financial assistance.
 

 The reasons assigned by Mrs. Robinson for giving 150 shares to her daughter and only 50 shares to her son were that her son was not careful with money and she did not want to give him, more money than he actually needed to keep his family going. At the time she made this gift Mrs. Robinson was 75 years of age, in go.od health and actively engaged in business and social enterprises. Her health continued good until August 10, 1939, when she died suddenly as a result of cerebral hemorrhage.
 

 
 *64
 
 Mrs. 'Robinson executed her last will and testament on May 27, 1934. It contained a provision whereby all the shares of stock in The William Powell Company were to go to a trustee for a period of five years after her death, and thereafter the trustee was to distribute the shares to her son and her daughter in such amount that the shares distributed, added to those she had given or might thereafter give to each of her children during her lifetime, would provide each of them with an equal number of shares.
 

 In December 1935, Mrs. Robinson made a second gift of shares in the company'to her son James, and at that time she gave him 100 shares. The purpose of this gift, as shown by the record, was to equalize the number of shares held by her son and her daughter. At the time this gift was made, Mrs. Robinson expressed her pleasure with the fact that her son was taking more interest in the business and the gift to him was made principally in appreciation thereof.
 

 The facts in this case differ materially from those which were considered in
 
 Tax Commission
 
 v. Parker,
 
 supra.
 
 In the
 
 Parker case
 
 all gifts in question had been made less than two years before the death of the donor. At the time of those gifts the donor, Mr. E. E. Myers, was 72 years old and in poor health. Although the evidence was not clear, that he knew the nature of his illness at the time the gifts were made, his death resulted from cancer.
 

 At the time of the making of the first gift, Myers, the donor, in effect stated to his children that he thought they had reached the stage when they would as wisely and as judiciously handle the property distributed to them as they ever would; but even then the donor deferred the full enjoyment of the first gift for a period of three years and stated to his children that this was only the beginning and that he wished to have
 
 *65
 
 the pleasure of seeing them enjoy his property while he lived. In the opinion of Robinson, Judge, it is said that:
 

 “While the distribution was in every sense a gift, yet it was not in the nature, of an act of generosity, of relieving a need, conferring a favor, the expression of appreciation or of a preference.”
 

 The gifts in question in that case were held to have been made in contemplation of death.
 

 The difference between the facts in the
 
 Parker case
 
 and those in the instant case is evident. Applying the, test announced in the
 
 Parker case
 
 to the facts in this case above recited, the conclusion is inevitable that the gifts of the 200 shares in 1932 were not made in contemplation of death, for it was not then regarded as a distribution or partial distribution of her estate, but, was rather an act of generosity and kindness.
 

 Although there is no evidence in the record in this case to show an intention on the part of Mrs. Robinson at the time of the gift in 1932 to make a distribution of her estate, the will executed in 1934 does clearly show her then intention to distribute her estate and to consider her previous gifts as advancements. This document is of persuasive effect in considering the gift made subsequently to its execution, for the pattern of distribution indicated therein was followed in the making of that gift. The will cannot speak the intention of the testator.before it was executed and would be competent only to indicate the motive for a gift thereafter made. Although the evidence in this case falls short of proving the existence of an intention and purpose in 1932 to make a distribution or partial distribution of her estate, it does show that the gift made by Mrs. Robinson in 1935 was made as a distribution of her estate according to her plan formed at the time of the execution of her will in 1934, and was in contemplation of death.
 

 
 *66
 
 ■ It follows that the judgment of the Court of Appeals in regard to the 200 shares distributed in 1932 should be and is reversed; but its judgment as to the TOO shares distributed in 1935 is affirmed.
 

 Judgment accordingly.
 

 Weygandt, C. J., Zimmerman, Bell, Williams and Hart, JJ., concur.
 

 Turner, J., concurs in the judgment insofar as the judgment of the Court of Appeals is affirmed, but dissents insofar as the judgment of the Court of Appeals is reversed.