**HILDEBRANDT, Estate of In Re; HILDEBRANDT, Plaintiff-Appellant, v DEPARTMENT OF TAXATION, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21089.   Decided March 7, 1949.

H. S. Duffy, Atty. Genl., W. H. Annat, Asst. Atty. Genl, Columbus, for defendant-appellee.

Thompson, Hine & Flory, Harvey B. Hobson, of Counsel, Cleveland, for plaintiff-appellant.

(DOYLE, J, of the 9th Appellate District, sitting by designation in place of MORGAN, PJ.)

## OPINION

By HURD, J.

This is an appeal on questions of law from a judgment of the Probate Court wherein the Court held taxable under Ohio Inheritance Tax laws four gifts inter vivos made by the decedent eleven years prior to her death. The appeal is prosecuted by Robert J. Hildebrandt, Executor of the last will and testament of Katharina Hildebrandt, deceased, from the order of the Probate Court dated February 6, 1948, overruling exceptions to the assessments of inheritance taxes upon the gifts made by the decedent to her four children in 1935, in the sum of $50,000.00 each. The Probate Court at the same time sustained Exceptions to another gift of $50,000 made at the same time, to four grandchildren of the decedent, the same being the children of decedent's deceased daughter, Catherine Hildebrandt Pfahl, in the sum of $12,500.00 each, holding that said gifts were not taxable. No appeal was filed by the Department of Taxation of Ohio from the order of the Probate Court sustaining the exceptions in respect of the gifts to the grandchildren.

There appears to be no dispute as to the facts. Katharina Hildebrandt who died January 31, 1947 at the age of 86 years was born in Gruenstadt, Germany, in the year 1860. In the year 1886 she married Charles R. Hildebrandt, the issue of said marriage being Catharine H. Pfahl, who died in 1919;

Hugo A. Hildebrandt who died in 1942; Mathilda H. Pfahl who died in 1944 and Robert J. Hildebrandt and Frances P. Haag. The decedent's husband is still living.

Russell Arnold, M. D., was the Hildebrandt family physician from 1937 to the date of decedent's death. From his professional observations during that period Katherina Hildebrandt enjoyed good health, was active in the affairs of her household, church and family until shortly before her death. She enjoyed unusually good health until 1944. In the last years of her life she suffered from heart trouble which resulted in her death on January 31, 1947. She had a strong constitution and retained her mental faculties until the time of her death.

For some years prior to 1893, Charles R. Hildebrandt, decedent's husband, operated a wholesale meat business in partnership with a relative. In that year his partnership was terminated and Mr. Hildebrandt moved to the present location of The Hildebrandt Provision Company on Walton Avenue in Cleveland, Ohio. In 1906 The Hildebrandt Provision Company, a corporation, was organized. The stock of this company was closely held by Charles R. Hildebrandt and Katharina Hildebrandt there being only a small amount held by individuals other than the Hildebrandt family. The company was a family enterprise with the father and mother and their five children being all active in company affairs.

The capital stock of the Company consists of 1500 preferred shares and 1500 common shares of which Katharina Hildebrandt at the time of her death owned 300 preferred and 300 common shares and substantially all the rest of said stock, both common and preferred, were owned by Charles Hildebrandt. At the time of the death of Katharina Hildebrandt, a unit consisting of one preferred share and one common share was worth $500.00.

Catherine Hildebrandt rendered numerous services to the company and acted as vice-president until the time of her death. Hugo A. Hildebrandt a son of the decedent, drove the delivery wagon for the company at the age of fourteen years and worked in the factory part time. After one year at Spencerian College, at the age of seventeen years, he began taking care of the books of the company and later became secretary and treasurer of the company which position he retained until the time of his death.

Robert J. Hildebrandt, the son of the decedent, began to sell sausage for the company in the Market House at the age of eleven years and went with the company on a full time basis when he was 18 years of age. He worked there continuously, later becoming superintendent and at the time

of his brother Hugo's death, was General Manager of the company.

Catherine H. Pfahl, a daughter of the decedent, worked in the company's retail market stand at the West Side Market House and did clerical work for the company until the time of her death in 1919.

Frances P. Haag, a daughter of decedent, worked part time in the office and later became secretary of the company.

The company developed into a very successful family enterprise in the processing of meats, growing from an organization of about 15 employees in 1906 to about 150 employees in 1947. At the time of the death of Katharina Hildebrandt, the company owned assets worth approximately two million dollars.

Charles R. Hildebrandt, decedent's husband, was for many years the active operating head of the company but about 1933 he became less active in the company and some of the responsibility for operating the company was placed with his two sons, Hugo A. Hildebrandt and Robert J. Hildebrandt.

In December, 1935, Katharina Hildebrandt made a gift at the Christmas season to her four children above referred to, in the sum of $50,000.00 each and a gift of $50,000.00 to her four grandchildren, the children of her deceased daughter, Catherine Hildebrandt Pfahl in equal shares. The gifts were made largely in government bonds and cash and the securities were actually transferred and delivered to the donees on Dec. 27, 1935.

According to the Federal Gift Tax Returns filed with the Government the gifts were "to create or to increase independent estates of the donees and permit them to receive the enjoyment of these gifts." After making the gifts the decedent retained property having a value of between $500,000.00 and $550,000.00. Her estate has been accumulated substantially from dividends of The Hildebrandt Provision Company and from income on securities originally purchased from dividends received from the company. The gross value of her estate was $750,000.00 at the time of her death in 1947. She retained until her death her entire stock interest in the Hildebrandt Provision Company.

Robert J. Hildebrandt, son of the decedent, testified upon the hearing that his mother advised him some time prior to Christmas in 1935 that she intended to make a substantial Christmas gift to her children as a reward for their contributions to the Hildebrandt Provision Company and also to create independent estates and so that they could enjoy this money.

The assignment of error is as follows:

"The probate court erred in determining that the gifts made to the decedents' four children, eleven years before her death, were subject to Ohio Inheritance Tax as having been made 'in contemplation of death' for the following reasons: (1) the department wholly failed to sustain its burden of proof that the inter vivos gifts were made in contemplation of death, and (2) that the evidence conclusively proves that said gifts were not made 'in contemplation of death.' "

The single question presented for our determination in this case is: Were the gifts in question made 'in contemplation of death' within the meaning of §§5331, 5332, 5332-2 GC?

The law on this subject seems to have been very well charted by several authoritative decisions of our supreme court, of appellate courts and one case by the Probate Court of Cuyahoga County. The difficulty arises in this and similar cases in the application of the law to the facts.

From an analysis of the controlling cases, certain principles emerge as follows:

(1) Whatever may be the interpretation placed on the phrase 'in contemplation of death' as applicable to gifts inter vivos in other jurisdictions, the meaning in Ohio is fixed by the statutory definition set forth in §5331-5 GC, viz:

"Contemplation of death means that expectation of death which actuates the mind of a person on the execution of his will."

See: **Sec. 5331 GC**
**In re Estate of Robinson, 145 Oh St 55** (decided April 4, 1945)
**Tax Commissioner v. Parker, 117 Oh St 215** (decided June 22, 1927)

(2) The controlling test is in the purpose of the donor. If the purpose is to distribute or partially distribute an estate by the device of gifts inter vivos, the transfers are taxable. If the purpose is in good faith to perform an act of generosity or kindness or to relieve the needs of children and their families, or if it is in appreciation or of reward for services rendered, the transfers are not taxable.

See: **In re Estate of Robinson, 145 Oh St 55; Tax Commissioner v. Parker, 117 Oh St 215; Schaefer v. Department of Taxation, 75 Oh Ap 533** (dec. June 4, 1945); **In re estate of Bender, 60 Oh Ap 107** (decided July 5, 1938); **In re estate of Jacob B. Perkins, 12 O. O. 455** (decided Sept. 21, 1938).

(3) Liability to taxation must be determined in each case by all the facts and circumstances existing at the time of the transfer and if multiple transfers are made, the facts and circumstances of each transfer should be separately considered.

See: **In re estate of Robison, 145 Oh St 55.**

(4) Transfers of property without a valuable consideration substantially equivalent in money or money's worth to the full value of such property made within two years of death are deemed presumptively in contemplation of death and the burden is cast upon the transferee to prove to the contrary.

See: **Sec. 5332 GC**

**Tax Commissioner v. Parker, 117 Oh St 215.**

(5) Where transfers are made more than two years prior to the death of donor, the burden is cast upon the Department of Taxation to show that such transfers were in fact made in contemplation of death within the meaning of the applicable General Code Sections (§§5331, 5332, 5332-2 GC).

See: **Commissioner v. Parker, 117 Oh St 215; Schaefer Exec. v. Dept. of Taxation, 75 Oh Ap 533; In re estate of Hamilton, 34 Abs 187.**

In this connection it does not follow, however, that the case should not be considered on the entire record or that the burden of proof cast upon the department must be sustained by and with its own evidence and witnesses. It is sufficient if upon the entire record the Department of Taxation has sustained the burden of proof imposed on it by law.

Coming now to apply the principles of law to the facts of the instant case, the record shows that the gifts were made eleven years prior to the death of the donor. Therefore the burden of proof rests upon the Department of Taxation to show that the transfers were made in contemplation of death.

The evidence here tends to support very definitely the claim of the exceptors that the purpose of the transferor was two-fold: (1) an act of generosity and kindness to the four living children and another gift in equal amount to the children of a deceased daughter, the latter gift not being challenged in this action. (2) as a reward for and in appreciation of the material assistance of the donees in assisting in producing the fortune out of which the gifts were made.

The record indicates clearly that this family enterprise was built up by the cooperation in one way or another of all the members of the family. The record with all reasonable inference indicates that the donees had worked hard, had put

in long hours at comparatively modest wages or salaries from their earliest years in helping to build up and make a success of the family enterprise. It was quite natural that the mother of the children upon reaching the age of 75 years and having a substantial sum of cash and securities on hand, should wish to show parental appreciation of the efforts of her children who, with her husband, were responsible in a large measure for the accumulation of the wealth which she possessed. Likewise, there is ample evidence in the record indicating a desire on her part to do an act of kindness for them at this particular Christmas season of 1935. It should also be noted that she did not denude herself of her entire fortune. The facts show that she retained approximately a half million dollars and that when she died eleven years later her estate approximated the amount she owned when the gifts were made. The facts also show that she enjoyed the support and consortium of her husband who himself was the possessor of an independent fortune greatly in excess of that possessed by her, all derived from the successful operation of the family business enterprise.

The Department of Taxation has urged two grounds, namely, the age of the decedent at the time the gifts were made and the fact that the gifts were made in equal amounts, as showing that the gifts were made in contemplation of death. If age alone were the controlling factor, a nontaxable gift inter vivos could not be made at an advanced age. The legislature has not attempted to provide any age limits nor can we do so by judicial interpretation. True, indeed, age must be considered a factor with other facts and circumstances at the time the gift is made. The only other factor here which is seriously urged by the Department of Taxation is that the gifts were in equal amounts.

We think the argument of equality fails when it is considered that another gift of equal amount to the grandchildren of the decedent was upheld by the Probate Court on the ground that it was for educational purposes.

It appears here that equalization of gifts, when considered with other facts and circumstances, is entirely compatible with motives of generosity and kindness as well as motives of appreciation for and reward for services rendered, the record indicating that all of the children had merited substantially equal recognition in their services for and on behalf of their parents.

A consideration favoring the contention of the exceptors is that the dispositive plan of decedent's will executed eight years after the delivery of the gifts inter vivos did not follow

the plan of the gifts. Neither did it provide for or constitute an equalization.

Here was a woman sound in mind and body, of advanced years, but still active and normal in all respects. The certificate of the doctor which was admitted by stipulation showed that for many years prior to her death she enjoyed good health and it was only during the last two years of her life that her health began to fail. The records show that she kept up her activities in all directions, church, social, cultural and community. She lived to the ripe old age of 86 years. These facts all point away from the claim that the gifts were made in contemplation of death.

In conclusion the members of this Court are unanimously and firmly of the opinion that the Department of Taxation of the State of Ohio failed to carry the burden of proof cast upon it of showing that the gifts in question were made in contemplation of death and hence subject to the succession taxes provided by the applicable sections of the General Code.

For the reasons stated, the judgment of the Probate Court of Cuyahoga County is reversed and the cause remanded to said court with instructions to determine the Ohio Inheritance tax in accordance with the law and this judgment and opinion.

Exceptions noted. Order See Journal.

DOYLE, J, SKEEL, J, concur.