ECK, ESTATE OF, IN RE.

Probate Court, Montgomery County.

No. 146744.   Decided December 16, 1960.

Mr. *Rex E. Weaver*, for Charlotte L. Eck, Executrix of the Estate of Ida Pansing Eck, Deceased.

Mr. *Mark McElroy*, attorney general, by Mr. *William P. Meehan*, for Department of Taxation, Division of Inheritance Tax.

ZIMMERS, J. This cause is before the Court upon exceptions filed by Charlotte L. Eck, executrix of the last will and testament of Ida Pansing Eck, Deceased, to the Court's determination of the inheritance tax payable on successions arising by reason of the death of Ida Pansing Eck. The decedent died June 12, 1958, at the age of eighty-four.

The exceptor alleges that the Court errored in finding that the shares of stock of the American Envelope Company set forth in Schedule D of the application for determination of inheritance tax was made in contemplation of death and subject to inheritance tax for the reason that said transfer was a free and unconditional gift by mother to her daughters and not made

in contemplation of death, and therefore, not subject to inheritance tax.

The only evidence introduced in the trial was introduced by the exceptor. The Tax Commissioner introduced no evidence of any nature whatsoever.

There is no question that the decedent made the alleged gift to her three daughters within two years preceeding the date of donor's death and were without a valuable consideration. Therefore, the burden was upon the exceptor to prove that the gifts were not made in contemplation of death and to overcome the presumption made by the statutes.

The Court must decide whether the gifts, totalling eighty-five thousand, eight hundred dollars, made by the decedent to her three daughters constituted gifts in contemplation of death.

Section 5731.02, Revised Code, provides that a tax be ". . . levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person, . . . in the following cases:

"(1) In contemplation of the death of the grantor, . . . or donor; . . ."

Section 5731.04, Revised Code, provides that

"Any transfer of property . . . without valuable consideration . . ., if so made within two years prior to the death of the transferror, is deemed made in contemplation of death . . . unless the contrary is shown . . ."

The definition for the term "contemplation of death" in Section 5731.01, Revised Code, is as follows:

"(E) 'Contemplation of death' means that expectation of death which actuates the mind of a person on the execution of his will."

This definition leaves much to be desired. Many authorities in other states have defined "contemplation of death" as the fear of impending death arising from some physical condition or peril in contrast to the general expectation of eventual death which is contemplated by all rational persons. See *Tax Commission* v. *Parker*, 117 Ohio St., 215 (1927), discussing the law of New York; 28 Am. Jur., Inheritance, Estate, and Gift Taxes, Sec. 145, page 83; 85 C. J. S., Sec. 1147 (2) (b), page 917.

Our Supreme Court, in Syllabus Four of *Tax Commission* v. *Parker, supra,* has placed upon this phrase a broader connotation than the courts of other states. It has held that the determining factor is whether such gift was in the nature of a distribution of the decedent's property in contrast to whether it was one which was merely intended as a lifetime favor or *Robinson,* 145 Ohio St., 55, 30 Ohio Opinions, 280 (1945); *Hildebrant's Estate* v. *Department of Taxation,* 86 Ohio App., 246, 41 Ohio Opinions 160 (1949); *Schaefer* v. *Department of Taxation,* 75 Ohio App., 533, 31 Ohio Opinions, 313 (1945); *In re Estate of Bender,* 60 Ohio App., 107, 13 Ohio Opinions 215 (1938); *In re Estate of Perkins,* 2 Ohio Supp., 33 (1938).

If the purpose of the transfer was a distribution of the donor's property in substitution for a testamentary disposition merely to hasten the effects of what would otherwise be testamentary or similar disposition, then the transfer is taxable.

Where a gift has been made within two years of death, the burden of proof to show by a preponderance of the evidence that such gift was not in contemplation of death is upon the person making the claim. *In re Walker's Estate,* 161 Ohio St., 564 (1954).

Under Section 5731.01, Revised Code, a rebuttable presumption is set up that the transfer was taxable if a decedent died within a two year period after the transfer. There can be no question that the presumption is established in the case at bar, but this rebuttable presumption serves to shift the burden of proof to the exceptor to satisfy the Court by a preponderance of the evidence that the said transfer was not made to avoid taxes and was not within the meaning of Section 5731.01, Revised Code, which defines "contemplation of death means that expectation of death which actuates the mind of a person on the execution of his will."

The exceptors, in their briefs, have very comprehensively considered cases involving transfers within two years of death and transfers made more than two years prior to death.

The Attorney General asserts in his brief that the "factual considerations" in the cases involving gifts made more than two years before death "would be of little value as guides." The Court readily agrees. Each case must be decided upon its

own particular facts. However, there is a distinction between the two types of cases, but it is procedural rather than substantive. The essential distinction lies only in matters of presumption and burden of proof. Regardless of where the burden of proof lies or who is aided by the presumption, certain factual considerations have probative weight in the ascertainment of the donor's state of mind when the gifts were made. These factual considerations are all probative to determine whether the donor had "that expectation of death which actuates the mind of a person on the execution of his will." See Section 5731.01 (E), Revised Code.

It is entirely proper to consider such facts as the donor's age, health, previous practice as to gifts, contemporaneous execution of the donor's will and transfer of his property, whether the gift is referable to the donees' intestate share or to the portion the donees are to receive through the donor's will, the portion of the donor's estate transferred, the length of time between the time the gifts were made and death, and other pertinent circumstances in the consideration of whether the donor's motives in making the transfer were to effect a distribution of his property or to effect an act of generosity. 85 C. J. S., Sec. 1147 (2) (d), page 924; also see *Hildebrant's Estate* v. *Department of Taxation, supra;* 148 A. L. R., 1052; 28 Am. Jur., Inheritance, Estate, and Gift Taxes, Sec. 149, 150, 151, page 85.

The Court will now consider these factors in the light of the facts disclosed by the testimony in the case at bar:

1. Age. Decedent was eighty-two years of age at the time of the transfer of eleven hundred shares of common stock of the American Envelope Company to each of her three daughters: Christine Eck Rees, Dorothy Eck Bierley, and the exceptor, Charlotte L. Eck—the decedent's only heirs-at-law. The Attorney General in his brief places much emphasis on the age of the decedent. Age must be considered a factor with other facts and circumstances at the time the gift was made. However, age is not conclusive or fully determinative and decisive of the question at bar. The testimony showed that the decedent was an intelligent person and was mentally alert up to the time of her death. She knew at the time of making the gifts that she had

reached the age when she might expect to die soon. As previously stated, the age of the donor doesn't decide the question ipso facto because such a holding would prevent a transfer by a person of advanced age which would not be taxable. The Revised Code establishes no age limitation and none can be established by judicial interpretation of the inheritance tax sections as they stand today. *Hildebrant's Estate* v. *Department of Taxation*, 86 Ohio App., 246; 41 Ohio Opinions, 160.

2. Health. The courts in many cases have considered the donor's health as a factor in the determination of whether a gift was in contemplation of death or not. *Tax Commission* v. *Parker, supra; In re Estate of Robinson, supra; In re Estate of Thompson*, 147 Ohio St., 119, 33 Ohio Opinions, 275 (1946).

Two of the daughters—donees—testified that their mother —decedent—enjoyed excellent health until receiving a fall in September, 1958 (and this was corroborated by Dr. A. J. Gabriel who testified that he had given the decedent a check-up in April of 1953 and she was "remarkably well"). The testimony further showed that the decedent had travelled by plane from Dayton to California to visit her daughter, Christine, each Christmas from 1949 through 1956, and she further had made a plane trip in May of 1957 to California and returned by the same mode of transportation in July of fifty-seven. There was further testimony that the decedent was very active in church and civic affairs and social clubs until September 1958. However, Ethel Solimano, a witness to decedent's will and codicil and a very close personal friend of the exceptor, Charlotte Eck, and who saw the decedent frequently up to the time of her death, testified on direct examination that from her observation the decedent enjoyed excellent health and was very energetic.

"Q. How long did this condition last?

"A. Until '57 or '58, latter part of '57.

"Q. Do you recall the date of Mrs. Eck's death?

"A. Well, I was down there but I can't think right now of the date.

"Q. Do you know in what year she died?

"A. She died last summer.

"Q. 1959?

"A. Yes.

"Q. Now referring to that, do you recall whether or not her last illness began in 1958 or 1957?

"A. Well, she didn't seem ill until she had to go to bed.

"Q. Do you know when that was, what year?

"A. That was in '58.

"Q. 1958?"

On cross-examination Ethel Solimano testified as follows:

"Q. You testified that she became ill, that is to the extent that she went to bed, the latter part of 1958, is that correct?

"A. Yes.

"Q. Then you mentioned something about in 1957 she seemed to lose her pep?

"A. Well—

"Q. Did she begin to slow down her activities?

"A. She began to slow down a little bit, but not much."

The fact that the decedent did not make her usual plane trip to California at Christmas time in 1957 to visit her daughter is probative value as to her state of mind at Christmas time in 1957, the time she allegedly made the gifts.

Dr. A. J. Gabriel testified that on April 23, 1953, that the decedent at the age of seventy-eight came to him for a check-up. "She did not appear to be her stated age. Looked somewhat younger. And at that time she had a normal elevation of blood pressure, senile osteoporosis, a common thing in elderly people; some hardening of the arteries and mild metabolic change in the person which is very common in people of this age. Treatment was prescribed was supportive in nature. He next saw the decedent on March 25, 1954, at which time she had a headache and some medication was prescribed for her. She was again seen on April 3, 1954, at which time her blood pressure had actually been reduced somewhat. That he did not see this patient again but had telephone conversations with the family and with her and did not see her until July of 1957. On July 19, 1957, this patient came in with what we would call a normal blood pressure and is borderline. She stated she felt somewhat tired." He testified that he gave her no further medication, just advised perhaps to act her age, because by his records at that time in 1957 the patient was 82 years of age. And he again had a telephone conversation on February 20, 1958, at which time she was having a little difficulty in sleeping for which he

ordered some medication, which apparently helped her. He did not treat her during her last illness. On cross-examination Dr. Gabriel testified that the decedent had some hardening of the arteries or arteriosclerosis.

3. Previous practice of making gifts. The testimony showed that the donor made a practice of giving her daughters equal monetary gifts each Christmas, and Dorothy Bierly, daughter-donee, testified: "She always gave us money at Christmas and instead of giving us money at Christmas, she gave us the stock."

Q. What year was that?

A. I do not even remember. '57. The same year I went back to teaching. That's right.

Q. You say that year she did not give you a monetary gift. She did not give you money?

A. A small amount but not as large as she used to.

Q. When did you actually receive that gift, Dorothy, do you recall?

A. Well, it was after—it was in '58 but I am not sure just exactly when we got the shares because American Envelope was going to have a split three for one and that is the reason we had to wait.

Q. In other words, she gave you American Envelope stock?

A. American Envelope stock, that's right.

Q. Do you know whether or not your mother filed a federal gift tax return for that gift?

A. I am pretty sure she did.

The decedent followed her usual pattern of giving her daughters money as Christmas gifts in 1957, in addition to the alleged gift of stock. The actual transfer of stock was not consummated until January 11, 1958. The testimony showed no previous practice on the part of the decedent to make substantial gifts for her daughters or any other individual.

4. The decedent executed her will on July 17, 1954, on which instrument she made bequests of 530 shares of common stock of American Envelope to each of her daughters, the donees in the transaction in question. It will be noted that the transfer of gifts to each daughter was in equal and in the same proportions, namely, eleven hundred shares to each daughter.

There was a failure by exceptor to show that the gifts or

transfers were made to relieve the financial need of any of the three daughters. Nor were such gifts or transfers made as a reward for services by the transferees. It appears by her will that she apparently wished to reward Charlotte for the care and companionship Charlotte gave her by devising a parcel of realty to Charlotte alone and devising another parcel equally among the three daughters. And these devises were not modified or changed by the codicil which decedent Executed on August 7, 1958. It should be noted that the date on which she executed her codicil was just prior to her last illness and was shown by the testimony to be the time when American Envelope Company was recalling its preferred stock. In the codicil the decedent states: "Item 1—Due to the fact that American Envelope declared common stock at this time in 1957 and the fact that I made a gift of some common shares of said company to my three daughters, the following modifications are here and now added to my last will and testament." Then in Item 2, Item 3, Item 4, she bequeaths an equal number of shares, namely, four hundred and ninety shares of common stock to each of her three daughters. Item 8: "Due to the fact that American Envelope Company is in the process of recalling and redetermining all preferred stock in said company, I hereby nullify all the bequests of preferred stock, provided of course that the recall preceeds my demise." Although the codicil was made subsequent to the transfer in question from the aforementioned items in the codicil, the recalling of the preferred stock apparently was a motivating factor in drawing the codicil and shows the state of mind or intent of the decedent. The decedent being an intelligent person must have been at that time in a state of mind which "activates the mind of a person on the execution of his will."

5. Were the gifts probably identical to the donees' intestate share or were they referrable to the portion they received through the donor's will? The probative value of this is readily evident.

If a donor distributes gifts among his beneficiaries in the same proportion as they would be entitled to receive them under the statute of descent and distribution or under the will of the donor, there is a strong indication that the distribution is in contemplation of death. See *In re Estel Robinson, supra*.

On the other hand if the distributive pattern of the gifts and the intestate or testate shares of the donor are dissimilar, then it is apparent that the motivation of the donor was probably something other than a distribution of her property.

In the case at bar the donor transferred the same number of shares to each daughter, and the bequest in her will was of equal shares to each daughter, indicating that this was a distribution of her property.

The codicil executed after the transfer of stock followed the distributive plan in decedent's will in the continuity of equalization as to shares of stock then owned by the decedent.

6. The portion of the donor's estate transferred. If the gifts of the donor are insignificant as compared with the value of the estate, it is reasonable to assume that the transfer to the donees was not made in contemplation of death. On the other hand if decedent's gift constituted a substantial portion of her total estate there would be a strong inference that the transfer was made in contemplation of death.

As counsel for the commissioner points out in his brief, the transfer of stock constituted approximately forty per cent of her property at that particular time, and thus would be a substantial gift, other than the normal Christmas gift. And as previously pointed out the decedent further gave the daughters some cash as a Christmas gift in 1957 which was her usual pattern as testified to by the one donee, Dorothy Eck Bierley.

7. Time between transfer of gifts and death. Approximately seventeen months followed the transfer of stock to her daughters.

The Court finds that the exceptor has not sustained the burden of proof imposed on her by law. The Court finds that the transfer was a distribution of her estate in contemplation of death and not an act of generosity to her three daughters.

The Court finds that the decedent had "that expectation of death which actuates the mind of a person on the execution of his will" when she had the stock transferred to her daughters.

Therefore, the Court finds that the exceptions are not well taken and are overruled.