SABO *v.* THE STATE OF OHIO.

(Decided December 19, 1927.)

*Messrs. Ormsby & Kennedy* and *Mr. A. S. Greenbaum,* for plaintiff in error.

*Mr. O. A. Hunsicker,* prosecuting attorney, and *Mr. A. B. Underwood,* for the defendant in error.

WASHBURN, P. J. John Sabo, plaintiff in error, was convicted of the crime of murder in the first degree, and there being no recommendation of mercy, he was sentenced to death. The record of the proceedings of his trial is before us on a petition in error.

The claim of the state was that Sabo and his chum, Lengyel, had a fight with one Gruich on May 5, 1926, and that thereafter Sabo made threats against Gruich; that on the evening of May 25, 1926, Sabo and Lengyel went in the latter's automobile near the intersection of certain streets in Akron where it was expected Gruich would pass; that, on the way, they picked up their chum, a young man by the name of Matthews, and when the three arrived near said intersection, Sabo got out and Lengyel took Matthews home, Lengyel promising to return and get Sabo; that, after Lengyel and Matthews left, Sabo went to said intersection and waited for Gruich; that a man by the name of Painter, who resembled Gruich in appearance, came to said intersection on his way home from work at about midnight, and Sabo shot and killed Painter, thinking he was Gruich; that Lengyel, on his return to get Sabo, and when near said intersection, heard a shot, and shortly thereafter picked up Sabo and took him to his home. Painter's body was found soon after the shooting, and two weeks later Sabo, Lengyel, and Matthews were all arrested and brought to the police station at about the same time.

Sabo denied any knowledge of the murder and claimed that he was with certain people at certain places on that evening; said persons were brought into the presence of Sabo and denied his story.

Lengyel told the police the story of that evening as outlined above, and Matthews signed a statement corroborating Lengyel's story, adding some details damaging to Sabo.

The state further claimed that, shortly thereafter, Matthews was brought into the presence of Sabo,

and repeated his story of the happenings that evening, and Sabo remained silent.

On the trial Lengyel testified as has been outlined, and there was testimony concerning finding near the place of the murder of a revolver and cartridges, which Lengyel testified he had seen some time previously in the possession of Sabo, and also of the finding of a rag, which Lengyel testified was in Sabo's possession that evening, and evidence was also introduced in reference to an attempted identification of Sabo as the purchaser of the cartridges so found with said revolver, and evidence tending to prove that Sabo had made threats against Gruich, and evidence was also introduced of the finding of the body of Painter and the circumstances connected therewith, showing that he had been killed by some one in precisely the manner claimed by the state.

Matthews, who had signed a written statement corroborating Lengyel's story and containing claimed admissions of the shooting made by Sabo to Matthews after the shooting and who had later confirmed said statement in the presence of Sabo, was not put on the stand as a witness for the state.

The defense introduced evidence that Sabo was at home and in bed that night — that being an alibi different than the one he first claimed when he was arrested — and also called Matthews as a witness, who testified that on said night he was in his home, which, if true, would disprove Lengyel's testimony that he and Matthews and Sabo were together near the place of the murder that evening.

On cross-examination Matthews was inquired of concerning all the statements he had made in writing and orally, which were inconsistent with his tes-

timony in court that he was at home on that night, and also concerning his statements as to talks with Sabo before and after the murder, which statements not only tended strongly to corroborate the state's evidence, but contained matter strongly indicative of guilt not theretofore in the evidence of the state.

This was all done without objection or exception, and thus evidence of all of the statements of Matthews was in evidence without objection and without any request of the court to limit the purpose for which such evidence should be considered by the jury.

Matthews' statements inconsistent with his evidence that he was at home that night were competent on cross-examination to lessen the credit which might otherwise be given to his testimony that he was at home, contradictory to the evidence of Lengyel on behalf of the state that Matthews was with Sabo and Lengyel in the vicinity of the murder, but they were not substantive evidence of the claimed facts contained therein which tended to prove Sabo's guilt.

For instance, one statement of Matthews was that, while he was with Sabo and Lengyel that night, Sabo said he was going to get that Serbian (meaning Gruich); while that was competent to contradict Matthews' evidence that he was not with Sabo and Lengyel, it was not competent as proof that Sabo made a threat against Gruich; Matthews could have testified in court that such a threat was made, but evidence that he stated to the police that a threat was made was mere hearsay on the question of whether or not a threat was made.

There is always a chance that such evidence will

be considered, not only as to the credit to be given to the contradicted witness, but as substantive evidence of the defendant's guilt, and, if requested, the court should limit the purpose for which such evidence may be considered. No such request was made in this case; there was not even an objection so as to challenge the court's attention to the matter. *Patterson* v. *State*, 96 Ohio St., 90, at page 103, 117 N. E., 169, L. R. A., 1918A, 583.

In Matthews' statements there were contained matters that did not tend to contradict his evidence that he was not with Sabo and Lengyel that night and which matters indicated the guilt of Sabo. For instance, in the statement Matthews said that the first time he saw Sabo after the murder he asked him if he felt sorry because "he got the wrong guy," and that he answered that "everything was set." That part of the statement was not competent for any purpose, but it was brought into the record on cross-examination without any objection being made, and was put in evidence again by questions asked of Matthews by counsel for Sabo. The attention of the court not being called to its incompetency, either by objection to its introduction or by request to charge in reference to it, we cannot reverse the judgment solely on the ground of error in the introduction of the same. Failure to object to incompetent evidence is a waiver of the right to object. *Ruch* v. *State*, 111 Ohio St., 580, at page 588, 146 N. E., 67.

After the contents of the signed statement of Matthews had been introduced in evidence by questions asked of Matthews on cross-examination, the state offered the writing in evidence, and the court admitted it, over the objection and exception of counsel for Sabo.

In view of the fact that the entire contents of the statement, the incompetent as well as the competent parts, were before the jury without objection, we find no prejudicial error in the admission of the writing.

Another matter complained of is the limitation of the cross-examination of an identification witness by the name of Wagner, and a remark of the trial judge made during the examination. We find no prejudicial error as to said matter. *Fabian* v. *State*, 97 Ohio St., 184, 119 N. E., 410.

A witness characterized the conduct of Sabo in a certain talk as "smart and ugly" and the court refused to strike that out, but shortly thereafter the witness made the same answer and the court then struck it out. We find no prejudicial error as to that matter.

Complaint is also made that the court refused to permit a certain witness to testify because she had remained in the courtroom in violation of an order of separation made by the court.

As to this, we find that the bill of exceptions, which was prepared by the accused and approved by the trial court, shows that such a ruling was made in chambers, but no exception was taken to the ruling, and there is nothing in the record to show that the ruling prevented the introduction of material evidence. The record does show that the witness and counsel and the trial judge went into the chambers of the court, but what transpired therein is not shown except that the court ruled that the witness could not testify. They returned to the courtroom, and without exception and without a statement of what the witness would testify to — all as hereinbe-

fore indicated — proceeded with the trial; and, moreover, there is sufficient in the record to raise the inference that the trial judge learned of facts in chambers which vested the court with discretion in the matter, and we find no abuse of discretion. *Dickson* v. *State*, 39 Ohio St., 73.

We find no error in the rulings of the court, of which complaint is made, in reference to the testimony of the witness John Hedervary, nor in reference to the testimony of Mrs. Plangar, except that the court did err in permitting the state, on cross-examination, to inquire of Mrs. Plangar in reference to the cause of her husband's death in Europe. That subject did not have even a remote bearing upon the issues in the case or the credibility of the witness. And likewise the trial court should not have allowed the state to inquire of said witness if she had had a bastard child, and to introduce her marriage certificate in support thereof; but, in view of the whole record, we find no such an abuse of discretion as amounts to prejudicial error in respect to said matters.

Complaint is also made that the court, in connection with the cross-examination of a number of witnesses, permitted them to testify concerning fights had by Sabo.

Evidence of these fights was first introduced without any objection, and later, when witnesses were asked in reference to them, no objection was made, except in a few instances, until rebuttal testimony was offered (which will be later referred to), and in some instances the objections when made were sustained, while in others the jury were instructed not to consider the evidence, so that, so far as the evi-

dence in chief is concerned, we find no prejudicial error in the rulings of the court in reference to this matter, but in rebuttal the court permitted the state to introduce the evidence of several witnesses concerning Sabo's fight or trouble with one Toth.

On cross-examination, Sabo, without objection, had testified concerning his trouble with Toth, and his version was substantially as claimed by the state, and hence the permitting of witnesses on rebuttal to testify to practically the same thing was not prejudicial; but whether Sabo was quarrelsome and had fights was not an issue, and the fact that the state, without objection, asked questions concerning that. matter on cross-examination, did not make it an issue as to which the state could offer testimony on rebuttal. It was a collateral and irrelevant matter, and the state was bound by the answers made; the rule being that, if the court, in the exercise of its discretion, for the purpose of affecting the credibility of a witness, permits questions as to an immaterial matter to be answered, the witness cannot be contradicted as to such immaterial matter on rebuttal.

In this case the matter concerning which rebuttal evidence was permitted was not another crime or misdemeanor of Sabo; it was concerning an offer to fight, and a threat made by Sabo in connection therewith. It is difficult to see how that transaction could have any bearing on credibility; but without objection or exception Sabo testified that he offered to fight and made the threat just as the witnesses on rebuttal testified he did. It is true that on re-examination Sabo changed his testimony slightly as to the

threat, but that did not make the rebuttal testimony competent.

As to this matter, we find no error in the rulings of the court on the admission or rejection of evidence in chief, and, as to the rulings on rebuttal evidence, we find the errors not prejudicial.

Nor were the circumstances such as to require the court, without suggestion of counsel, to charge the jury that evidence as to Sabo's fights and quarrels not connected with the crime charged should be considered only on the question of credibility to be given to Sabo as a witness and not for the purpose of creating a probability of his having committed the crime charged. *Patterson* v. *State,* 96 Ohio St., 90, at page 103, 117 N. E., 169, L. R. A., 1918 A, 583.

Complaint is also made of misconduct in argument by the prosecuting attorney and his assistants, but the record does not show that any objections were made or exceptions taken in reference to the matters complained of; nor was the court asked to charge anything in reference thereto. We find that said arguments were not so flagrantly improper as to prevent a fair trial, and that, in the absence of objection and exception, error cannot be predicated thereon. *Scott* v. *State,* 107 Ohio St., 475, 141 N. E., 19.

It is also argued that there was error in the charge of the court, but here, too, there was no exception taken at the time of the trial. There are only two complaints made as to the charge and one of them is clearly technical and without merit; the other relates to the charge of the court on the subject of alibi. The court substantially followed the form which has been in common use for years in this section of the

state, but which is held to be erroneous in *Stevens* v. *State,* 26 Ohio App., 53, 159 N. E., 834. It is conceded that in one part of the charge the law in reference to alibi is correctly set forth, but it is claimed that in another part of the charge there is an incorrect statement which is inconsistent therewith.

We assume that parts of the charge on this subject in this case may fairly be said to be inconsistent, and for that reason erroneous, as held in *Stevens* v. *State;* but at the close of the charge the court asked counsel for the accused if there was anything which he desired to call to the attention of the court, and counsel thereupon requested an additional charge in relation to alibi (but not involving the aforementioned inconsistency), which was given, and counsel for the accused then stated, in answer to an inquiry by the court, that he had nothing further to suggest; and no exception was taken to the charge or any part thereof.

To justify a reversal for such an error in the charge as is here involved an exception was necessary; but, in view of the whole charge, we are of the opinion that the error was not prejudicial. The jury were told that the accused was not required to prove his alibi by even a preponderance of the evidence, but it was sufficient if all the evidence raised a reasonable doubt of his guilt, and the court repeated many times and in many places in the charge that the burden was on the state to satisfy the jury beyond a reasonable doubt of the guilt of the accused, and, if it failed to do so, that the accused should be acquitted; and aside from the matter referred to, the charge was an able statement of the law and eminently fair to the accused.

As to practically all of the complaints made which are of any importance, and which we have found to be well taken, there were no exceptions taken, and we are not authorized to reverse solely on grounds of error of law occurring at the trial as to which no exceptions were taken and noted on the record, unless the errors, when considered in connection with the whole record, are such as to make the judgment contrary to law, and a motion for a new trial is filed and overruled and exception taken thereto.

If errors occur at the trial of either a civil or criminal case, and no exceptions are taken thereto, a reviewing court cannot reverse solely for such errors; but if a motion for a new trial, containing the ground that the verdict is contrary to law, is overruled and exception noted, a reviewing court will consider said errors in connection with the whole record for the purpose of determining whether the justice of the case requires a reversal of the judgment.

In a case, if a consideration of the entire record leads to the conclusion that the accused was not deprived of that fair trial which is guaranteed to him by the Constitution and the laws of the state, and that his guilt has been established by that degree of proof which the law requires, a judgment of conviction is not contrary to law, and the justice of the case does not require a reversal, even though during the trial there were some errors of law to which no exceptions were taken.

The argument of counsel in this court created the idea in our minds that there was sufficient doubt as to the guilt of the accused, and that the complaints made were of such a character as to warrant the

conclusion that the accused did not have the fair trial that he was entitled to; but, after a careful consideration of the record, we are satisfied that the guilt of the accused was established to a moral certainty, and that the matters about which complaint is made, when considered in connection with the whole record, were not such as to deprive him of a fair trial, and that it is, therefore, our duty to affirm the judgment.

The judgment is affirmed.

*Judgment affirmed.*

FUNK and PARDEE, JJ., concur.