## GUTWEIN v C & S AUTO SUPPLY CO

Ohio Appeals, 2nd Dist, Montgomery Co

No 1292.   Decided Jan 16, 1935

Heald, Zimmerman, Clark & Machle, Dayton, for plaintiff in error.

Clifford R. Curtner, Dayton, for defendant in error.

## OPINION

By KUNKLE, J.

The reasons assigned by the trial court for directing the verdict are fully set forth in such opinion.

The testimony introduced is rather extensive, but the larger portion thereof relates to matters which are not relevant to the motion in question.

The only testimony reflecting upon the question at issue is found in that of William E. Clark, the driver of the automobile,

at the time of the accident and of Mr. Schell, the president and majority stockholder of the defendant company.

In brief, the record shows that William E. Clark who was the manager and secretary of the defendant corporation was employed by the defendant corporation which conducted an automobile accessory business in the west part of the city of Dayton; that Clark lived in the eastern part of the city and that he went from his home to his place of business either by street car or automobile in the morning and was required to open the office or store of defendant between 8:15 and 8:30 A. M. and to remain until about 6:00 P. M. in the evening; that Schell, the president of the company, was a brother-in-law of Clark and Clark lived at the residence of Schell; that the defendant owned a Ford truck and also the Ford roadster which was being driven by Clark at the time of the accident in question; that the Ford roadster in question was used at times in making emergency deliveries which the Ford truck could not make.

Clark testifies that he drove this Ford roadster from the place of business of defendant in error to his home upon certain occasions when he desired to use the roadster in the evening for his own purposes; his testimony is that this occurred at different intervals but that such use would average about twice a week. He testifies that upon each occasion when he desired to use the Ford roadster that he first secured permission from Mr. Schell, president of the company, to take the roadster home for his private use during the evening.

Mr. Schell, the president of the company, testifies to the same effect. They both testify that upon the evening preceding the day of the accident in question, Clark asked Mr. Schell if he might drive the roadster home that evening as he desired to go to a show; that Mr. Schell consented; that he thereupon drove the roadster home that evening and the next morning proceeded to take the Ford roadster to the office of defendant and while so doing the accident in question occurred.

The pertinent testimony upon the question as to whether Clark was acting within the scope of his employment at the time of the accident or whether he had possession of the automobile in question upon a mission of his own are set forth in detail in the respective briefs of counsel for plaintiff in error and counsel for defendant in error.

We will not attempt to requote such testimony in detail as the same appears in the bill of exceptions and has been quoted in full in the respective briefs of counsel. In brief, however, the testimony clearly shows that upon the morning in question, Clark was going to his work at the office of defendant and instead of taking the street car, as he did at times from his home to the office, drove this Ford roadster, and on the way to the office the accident in question occurred.

The testimony of the only witnesses upon this subject is direct and to the effect that Clark was given permission upon the previous evening to use the said automobile for his own pleasure and after having so used the same was returning the automobile the next morning to the place of business of defendant in error.

The testimony shows that Clark was not delivering anything for the defendant either upon the previous evening or upon the morning of the accident.

On page 159 of the record Clark testifies as follows:

"Q. And how did you happen to have the automobile? How did you happen to be going to work in the automobile on the morning of the accident?

A. I had used the car the night before for my own pleasure and kept it at the house all night.

Q. In taking the automobile home to the house the evening before the accident, did you have any company errands in so doing? A. No, sir.

Q. And that evening you had used the automobile for what purpose? A. I went to a show.

Q. And invited a young lady to go with you, is that correct?

A. Yes, sir.

Q. Did you have any other purpose in bringing the automobile home that evening, except to take the young lady to the show? A. No, sir.

Q. Did you, at any time after you took it home from the work you had done, had taken it home from work on the day before, do any company work? A. No, sir."

The record shows that Clark had the possession of the automobile on the night in question with the permission of Schell, the president of the company and there is no testimony in the record which would warrant us in holding that the automobile was being used by Clark either upon the night before the accident or the morning of the

accident for any business or purpose of the defendant.

The testimony of Mr. Schell, in reference to the use which Clark was permitted to make of this Ford roadster in the evening upon certain occasions, including the evening prior to the accident, supports the testimony of the witness, Clark.

The burden would be upon the plaintiff in error to establish the fact that the automobile in question, which belonged to the defendant company, was being operated by Clark within the scope of his employment. A review of the testimony satisfies the court that plaintiff in error has failed to establish such fact. On the contrary, the evidence discloses that Clark was given the right to take the car home on the previous evening solely for his own pleasure and that he was merely returning the automobile at the time of the accident.

As above suggested all of the pertinent testimony upon this subject is to be found in the briefs of counsel for plaintiff in error and counsel for defendant in error.

Our Supreme Court in a recent decision in the case of **Hamden Lodge 517 I.O.O.F., et v Ohio Fuel Gas Company, Ohio Law Bulletin and Reporter, March 26, 1934, page 388**, has announced the following rule, paragraph 3 of the syllabus:

"Upon motion to direct a verdict, the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if, upon any essential issue after giving the evidence such favorable construction, reasonable minds can reasonably come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him."

Paragraph 4 of the syllabus:
"Where from the evidence reasonable minds may reasonably reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict upon the weight of the evidence."

Upon a careful consideration of the authorities cited by counsel including the case reported in the Bar Association Report of January 7, 1935 and of the record, we can not escape the conclusion but that reasonable minds, under the record presented to us, could arrive at but one conclusion and that would be that Clark, the driver of this Ford roadster at the time of the accident was not acting within the scope of his employment with defendant.

Under such state of facts, it was the duty of the trial court to direct a verdict. We find no prejudicial error in the court so doing, and the judgment of the lower court will be affirmed.

HORNBECK, PJ, and BARNES, J, concur.

## ON APPLICATION FOR REHEARING

Decided Feb 9, 1935

By THE COURT

We have considered the application of plaintiff in error for a rehearing of this case and upon consideration are of opinion that the original decision should be adhered to.

The application for rehearing will therefore be overruled.

HORNBECK, PJ, KUNKLE and BARNES, JJ, concur.