**SENN, Admrx., Plaintiff-Appellee, v. LACKNER, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 2125. Decided January 17, 1951.

Estabrook, Finn & McKee, Dayton, for plaintiff-appellee.
Iddings, Jeffrey, Weisman & Rogers, Dayton, for defendant-appellant.

## OPINION

By WISEMAN, J:

This is an appeal on law from the Common Pleas Court of Montgomery County from a judgment entered on a verdict rendered in favor of the plaintiff. The action is one for wrongful death arising out of an automobile accident which occurred on U. S. Highway No. 25 near the boundary line between Warren and Butler Counties.

The defendant-appellant was engaged in the sale of both new and used automobiles in the City of Miamisburg, Ohio. The driver of defendant's automobile had been employed as a salesman by the defendant on March 15, 1949. The accident occurred on April 23, 1949, at about eight-thirty o'clock in the morning. The salesman resided in Cincinnati, Ohio, and was using an automobile owned by the defendant to travel from his residence to the defendant's place of business at the time the accident occurred. The salesman's hours of employment were from nine A. M. until five-thirty P. M.

The salesman was driving in a northerly direction and the plaintiff's decedent was driving in a southerly direction at the time of the collision. There is evidence supporting the claim that when the two automobiles were sixty yards apart two dogs started to cross the highway from the east side of said highway; that the salesman's automobile struck the first dog and that he at that time swerved his automobile from the northbound traffic lane across the center line of the highway and collided with the automobile being driven by plaintiff's decedent in the southbound traffic lane.

In her amended petition plaintiff alleges five specifications of negligence:

(1) In causing and permitting defendant's said automobile to run into and collide with the automobile of plaintiff's decedent;

(2) In failing to keep defendant's automobile under control;

(3) In operating defendant's automobile at a high rate of speed, to-wit: 55 miles per hour, a speed greater than is reasonable and proper under the circumstances there and then existing;

(4) In failing to change or divert the course of defendant's automobile after defendant's agent saw, or in the exercise of ordinary care ought to have seen, the dangerous and perilous position of the automobile of plaintiff's decedent;

(5) In failing to keep defendant's automobile on the right side of the road.

The defendant filed an amended answer denying the allegations of negligence and specifically denying that the driver of the automobile owned by the defendant was his duly authorized agent as alleged or that he was acting in the service of or on the business of the defendant, and as a further defense pleaded contributory negligence on the part of the plaintiff. To the amended answer the plaintiff filed a reply denying each and every allegation set forth in the amended answer inconsistent with the averments of plaintiff's petition.

The appellant in his brief states that there are two principal issues presented: The agency of the driver of defendant's automobile, and whether the negligence of defendant's driver, if any, was the proximate cause of the collision.

Fourteen errors are assigned. The first, second and third errors assigned relate to the admission and exclusion of evidence. One of the plaintiff's witnesses, an occupant of the automobile driven by plaintiff's decedent, testified that "As he was getting closer and closer, and we were getting closer to the dogs the first dog was near the center of the roadway, and about this time the on-coming car, in an attempt to avoid hitting the second dog, swerved into our lane, hitting the first dog." Defendant's counsel interposed an objection and moved to strike. The record is none too clear whether the entire answer was sought to be stricken, or only the words "in an attempt to avoid hitting the second dog." In his brief counsel for defendant contends the entire answer should be stricken. The objection and motion were overruled. The words last quoted should have been stricken, but we find no prejudicial error resulting. The remainder of the answer was competent, relevant and material.

The plaintiff's decedent was a classified civil service employee at Wright Field, Dayton, Ohio, and was rated as "Radio Engineer, P-4" at an annual salary of $5,232.00. There was testimony introduced to show that from 1942 to the date of his death, plaintiff's decedent had received ten promotions, stepping up his annual salary from $1,800.00 to $5,232.00. His service record, which was "excellent," was placed in evidence. Several witnesses were permitted to testify for the plaintiff relative to the chance of promotion of decedent. One witness was the immediate superior of the decedent, another in charge of the administrative work of the laboratory and responsible for carrying out the proper pay schedule at Wright Field, and the other witness was employed at Wright Field as Chief of Aircraft Radiation Laboratory and familiar with the evaluation process that governs the efficiency ratings entered on service records and the time factors controlling promotions. All three witnesses were acquainted with the plaintiff's decedent and familiar with the work performed by him. All three witnesses testified, in answer to a hypothetical question, that a person with decedent's qualifications and service record had a good opportunity for promotion. Was this testimony admissible? The appellee contends that in determining the pecuniary injury suffered by the next of kin of the decedent the jury had the right to consider not only the earnings of decedent at the time of his death, but, also, the reasonable expectancy of earnings in the future. That this is the established measure of damages is conceded. **Grotenkemper v. Harris, Admr., 25 Oh St 510; Schendel v. Bradford, 106 Oh St 387, 391, 140 N. E. 155; N. Y. C. & St. L. Ry. Co. v. Roe, Admr., 4 C. C. N. S. 284; Acher v. Columbus and Southern Ohio Electric Co., 42 Abs 430, 60 N. E. (2d) 932; Bartlebaugh v. Pennsylvania Rd. Co., 51 Abs 161, 78 N. E. (2d) 410.** But is testimony on the part of a witness relative to the prospects of decedent for promotion competent? In **Hesse, Admx. v. Rd. Co., 58 Oh St 167, 50 N. E. 354,** the court on page 171 held:

"Against the objection of the defendant the trial court permitted witnesses to testify that the plaintiff's intestate was in the line of promotion when he received the fatal injuries. The jury were otherwise fully informed as to the intestate's habits, health, position and capacity to earn. These and other like circumstances constituted the existing facts from which the jury were to determine the amount of damages which they should assess. The evidence to which the objection was made was introduced to show a supposed probability that his capacity to earn would have become greater

in the future. It started an inquiry which could have no other effect than to consume time unduly and to introduce speculative considerations into the assessment of damages. Brown, Admr. v. The Chicago, R. I. & Pac. Ry. Co., 64 Iowa, 652."

We are unable to determine from the opinion in that case the source of information of the witnesses, or whether the witnesses were properly qualified to testify on the subject. That case cannot be considered a precedent on the question raised here. In the instant case the testimony was in the nature of opinion testimony given by witnesses qualified as experts. The witnesses were given a hypothetical set of facts and asked to state what chances such a hypothetical person possessed for promotion. The general rule is that an opinion or conclusion of a witness is incompetent and inadmissible. The reason for such exclusion is that it invades the province of the jury as triers of the facts. However, exceptions to the general rule have been found to be necessary to the proper administration of justice. A well recognized exception is where scientific and specialized knowledge or experience is required in a particular art, science, trade or business and for which the general common sense and practical experience of the jury are inadequate. **Vol. 17 O. Jur. page 421, Section 331.** Any evidence which would assist the jury in fixing the reasonable expectancy of future earnings was competent. The work in which the plaintiff's decedent was employed was of a highly technical character in a field concerning which the public and the jury would have little knowledge, and the system under which promotions were granted was likewise complicated and technical. It therefore was the obligation, as well as the privilege, of the plaintiff to offer any probative testimony as to the probable future earnings of plaintiff's decedent. In our opinion this evidence was competent.

In this type of action it is proper to introduce by a qualified witness the cost of purchasing a simple annuity based on the life expectancy of the decedent and yielding two-thirds of his annual salary at the time of his death, which was conceded to be the amount contributed toward the family support. **Bartlebaugh v. Pennsylvania Rd. Co., 150 Oh St 387, 82 N. E. (2d) 853.**

Photographs of the highway at the place of collision, taken the day after the accident, were properly admitted as the evidence shows that the marks on the highway shown on the photographs existed immediately after the collision. There was evidence to support the conclusion that the photo-

graphs clearly represented the condition immediately after the collision and therefore were admissible. **Vol. 17 O. Jur. page 579, Section 472; Vol. 39 O. Jur. pages 626, 627, Section 49.**

Prior to the trial the deposition of the defendant's salesman was taken and on cross-examination at the trial plaintiff's counsel questioned the salesman relative to statements made in the deposition at variance with his testimony in court respecting the speed of plaintiff's decedent's automobile immediately before the collision. Counsel for the defendant, on re-direct examination, sought to establish that in the deposition the witness had made other statements respecting the speed of decedent's automobile consistent with his testimony in open court. Objection was sustained to defendant's counsel reading such questions and answers from the deposition. Inconsistent statements may be shown on cross-examination to impeach a witness. **Coca Cola Bottling Works Co. v. Meyer, 28 Oh Ap 468,** 162 N. E. 826; **Sabo v. State, 29 Oh Ap 200,** 163 N. E. 496; **Saunders v. Wiggins, 48 Oh Ap 174,** 192 N. E. 745. But an impeached witness cannot be rehabilitated by showing prior consistent statements. **Cincinnati Traction Co. v. Stephens, 75 Oh St 171,** 79 N. E. 235; **Miller v. Piqua Transfer and Storage Co., 57 Abs 325; Vol. 42 O. Jur. page 437, Section 429;** Vol. 58 Am. Jur. page 457, Section 817; Vol. 140 A. L. R. page 49 (citing Cincinnati Traction Co. v. Stephens, supra); Vol. 41 L. R. A. N. S. page 878; Jones on Evidence, 4th Edition, Vol. 3, page 1612, Section 869.

We find no misconduct on the part of the trial judge as claimed under appellant's fifth assignment of error.

For his fourth and sixth assignments of error the appellant contends the court erred in overruling defendant's motion for directed verdict at the close of plaintiff's testimony and again at the close of all the testimony. When defendant elected to proceed to present his defense he waived his right to predicate error on the action of the court at the end of plaintiff's case. **Wilkinson v. Erskine & Son, 145 Oh St 218,** 61 N. E. (2d) 201; **In Re Estate of Robinson, 145 Oh St 55, 61,** 60 N. E. (2d) 615; **Halkias v. Wilkoff, 141 Oh St 139,** 47 N. E. (2d) 199; **Youngstown & S. Rd. Co. v. Faulk, 114 Oh St 572, 578,** 151 N. E. 747; **Vol. 39 O. Jur. page 872, Section 216.**

The action of the court in overruling the defendant's motion for directed verdict at the close of all the evidence, is properly challenged and will be considered, together with the eleventh assignment of error, that the verdict and judgment are against the manifest weight of the evidence, and are not sustained by sufficient evidence and are contrary to law, and the twelfth

assignment of error, that the court erred in overruling defendant's motion for judgment non obstante veredicto, and the thirteenth assignment of error, that the court erred in overruling defendant's motion to vacate and set aside the judgment and grant a new trial. These assignments of error raise the question as to the sufficiency of the evidence on the two major issues, viz: Whether the driver of defendant's automobile was negligent and, if so, whether the defendant was chargeable with the negligent acts of the driver on the ground the driver was defendant's agent and acting within the scope of his employment at the time of the collision. On the question as to whether the driver was negligent we have no difficulty in finding, on the basis of the whole record, that the verdict was not against the manifest weight of the evidence, was sustained by sufficient evidence, and was not contrary to law. There was ample evidence to support the verdict on the basis that the driver of defendant's automobile was guilty of negligence which was the proximate cause of the collision.

We come now to consider the principal question in the case: Was the driver of defendant's automobile acting as agent for defendant and within the scope of his employment at the time and place of collision?

The evidence when construed most favorably to plaintiff shows that the driver of defendant's automobile was employed as a salesman by the defendant on a fixed salary to sell automobiles for the defendant at his place of business in the City of Miamisburg; that his working hours were from nine A. M. until five-thirty P. M.; that he resided in Cincinnati, Ohio; that the salesman did not own an automobile, but that it was his purpose to purchase a new automobile from defendant; that he planned later to move his residence to Miamisburg; that the defendant granted permission to the salesman to use a used automobile owned by the defendant to drive to his residence in the evening and return to his place of employment in the morning; that the salesman had a choice to use or not to use an automobile for such transportation and if an automobile were used he had a choice of which automobile to use; that the automobile used at the time of collision was equipped with dealer license plates of the defendant; that the salesman at times purchased gasoline for the automobile so used for which he was not reimbursed; that the salesman had other means of transportation to and from his place of employment by the use of a bus line; that

no consideration passed or was agreed upon between the defendant and the salesman on account of the use of such used automobile for such purpose; that the duties of the salesman were to handle prospective purchasers at defendant's place of business and to sell automobiles; that the salesman was authorized to sell used automobiles owned by the defendant at a fixed price to any person at any time or place, regardless of the place of residence of the purchaser; that the sales actually made by the salesman were made at defendant's place of business; that the automobile driven by the salesman at the time of the collision was taken by the salesman with the consent of the defendant for the purpose of going to his residence in the evening and returning to his place of employment the next morning; that at the time of the collision the salesman was driving from his residence in Cincinnati to his place of employment in Miamisburg.

It will be observed that the collision occurred at eight thirty A. M. and that the salesman's duties did not begin until nine A. M. at the defendant's place of business.

Was the salesman acting under the direction or control of defendant at the time of collision? Was the salesman acting in the discharge of his duties as salesman at the time? Was the salesman engaged at the time in the prosecution of the defendant's business? The latest expression of our Supreme Court on this question is **Rogers v. Allis-Chalmers Mfg. Co., 153 Oh St 513**, 92 N. E. (2d) 677, in which the Court, on page 526 said:

"In order to obligate a master to respond in damages for the negligence of a servant it is necessary not only that the servant be acting within the scope of his employment but the master must have the power of control and direction over the conduct of the servant."

In the instant case the facts do not meet the test. There is no evidence whatever that the defendant had "the power of control and direction" over the salesman while the salesman was driving from his residence to his place of employment. The controlling rule is simply stated but the difficulty always lies in its application. In **The Lima Railway Co. v. Little, 67 Oh St** 91, 65 N. E. 861, it was held that the test of the master's liability is "whether such act was done by the servant while engaged in the service of, and while acting for the master, in the prosecution of the master's business." In **Nagy v. Kangasser, 32 Oh Ap 527**, 168 N. E. 517, it was held that the employee's act must be a "part of actual duty connected with employment." In that case the

accident happened while the employee was driving his own automobile on his way to work. In **Conart Motor Sales, Inc., v. Shullo, 70 Oh Ap 423**, 46 N. E. (2d) 415, the facts were similar to those in the instant case. In that case the driver of plaintiff's automobile was a salesman for plaintiff and at the time of the accident was driving an automobile owned by the plaintiff from the place of business to his residence for the purpose of eating his dinner, intending to return to his place of employment. The court held that the salesman was not on his master's business at the time of collision; that the rule of respondeat superior did not apply and that a plea of contributory negligence in a suit by the employer against a third person is not a good defense. In **Gutwein v. C. & S. Auto Supply Co., 18 Abs 577**, where similar facts appear, this court held that "It is not error to direct a verdict for the defendant, where the evidence shows that the employee had borrowed the company car for personal use the night before, and was returning it to the defendant when the collision occurred." In that case the employee was driving to his place of employment in the morning when the collision occurred. In Brown v. Bond, 190 Miss. 755, the court held:

"The mere permission of master for servant to use an automobile in going to and from his meals or his home does not render servant master's 'agent' or render master liable for servant's negligence while so doing."

In Vol. 57 C. J. S. page 326, Section 574 b. the text is as follows:

"The facts that in perpetrating the injury complained of the servant, while acting for some purpose of his own, used facilities or instrumentalities supplied by the master and that the injury could not have been inflicted without such facilities or instrumentalities impose no liability on the master. The master is liable only when his facilities or instrumentalities are being used by the servant for the purpose of advancing the employer's business or interests. This is true even though the facilities or instrumentalities causing the injury were used with the consent of the master or were maintained by the master entirely for the use of the servant, and it has been held that the fact that the facilities furnished were dangerous by reason of defects therein is immaterial."

The only possible theory upon which this case could have been submitted to the jury would have been on the ground that a reasonable inference of agency arose from the fact that the evidence showed that the automobile being driven

by Fink at the time of the collision was owned by the defendant and had been taken by Fink with permission of the defendant on the night before the collision occurred. In **Dowd-Feder Co., Inc. v. Truesdell, 17 Abs 647,** this Court held that in the absence of any evidence presented by the defendant used car company as to the nature of the business the salesman was engaged in while driving defendant's automobile the inference that the salesman was acting within the scope of his employer's business is sufficient to sustain a verdict for the plaintiff. It must be observed that in that case the defendant failed to introduce any evidence as to the nature of the business the driver of the defendant's car was engaged in at the time of the collision. In the case at bar there is positive and overwhelming evidence in proof of the fact, that the defendant granted permission to the plaintiff to take the used car on the night before the collision for the purpose of going to his residence in Cincinnati; that at the time of the collision he was driving this used car from his residence to his place of employment; that the accident occurred at 8:30 A. M. and that his duties at his place of employment did not begin until 9:00 A. M.; that at the time the defendant granted Fink permission to use the car the purpose of its use was the convenience of Fink and not the defendant; that at the time the collision occurred the car was being used not in furtherance of the master's business, but for the personal convenience of Fink. This evidence is not contradicted. We recognize the rule that in the absence of evidence to the contrary a reasonable inference may arise with respect to the question of agency. However, where the evidence is positive and uncontradicted, as in this case, with respect to the matter of the permissive use of the defendant's car by the driver for the purpose of the driver's personal convenience and not in furtherance of the master's business, no inference may be drawn that at the time of the collision the driver was acting within the scope of his employment. One of the latest pronouncements of the Supreme Court on this question is found in **Jackson v. Frederick, 152 Oh St 423, 426, 89 N. E. (2d) 645,** which approved and followed **White Oak Coal Co. v. Rivoux, Admrx., 88 Oh St 18, 102 N. E. 302.** See also **Hillman v. Servive Packing Co., 67 Oh Ap 254, 36 N. E. (2d) 433; Zarn, Admx. v. Dominique, 39 Oh Ap 442, 449, 177 N. E. 850; House v. Stark Oil & Metal Co., 33 Abs 345.** In the latter case the court, on page 353, says:

"The situation differs radically from those cases where the vehicle being operated is the ordinary automobile, which

may be in the possession of the driver under varying circumstances, none of which would constitute or tend to constitute him the agent of the owner. We have many cases where an automobile is operated without the owner's consent, where the driver is out on a joy ride. We have cases where the driver is employed by the owner of the automobile, but his occupation does not include the operation of the automobile. **We have cases where the automobile owned by the defendant is operated by the defendant's authorized agent, but at the time of the accident is being used not for the principal's business, but for some purpose in which the driver alone is interested.**"

The following cases cited may be distinguished on the facts: **Amstutz v. Prudential Life Insurance Co., 136 Oh St 404, 26 N. E. (2d) 454; E. S. Gahagen & Smith, 48 Oh Ap 290, 194 N. E. 26; Standard Motor Sales v. Miller, 39 Oh Ap 7, 164 N. E. 55; Rhude v. Koehl, 55 Abs 532; Bolatin-Drabkin Furniture Co. v. Batten, 18 Abs 113; Authorized Dealers, Inc. v. Alms & Doepke Co., 12 Abs 158.** In **Fink v. Industrial Commission, 25 Abs 21,** the court found that the employee was serving the interest of the master as well as his own and that the master had the right to control the actions of the employee.

An interrogatory was submitted to the jury which required it to state specifically what business of his employer the driver of the defendant's automobile was engaged in at the time the accident occurred, which was answered: "Transportation in the course of selling used cars for his employer." The case of the appellee is not strengthened by this answer. In fact, the answer of the jury demonstrates a weakness in the case of the appellee as there is no evidence to support the answer or from which a reasonable inference may be drawn to that effect.

In our opinion any inference as to agency was so completely refuted by the uncontradicted evidence on the subject that reasonable minds could not differ on this matter; reasonable minds could only conclude that the salesman at the time and place of collision was not acting within the scope of his employment or in furtherance of his master's business. The court should have sustained defendant's motion for directed verdict and defendant's motion for judgment non obstante veredicto.

If the court is incorrect in its judgment that the evidence on the question of agency was insufficient as a matter of law to submit the case to the jury, we have no hesitancy in concluding that on the basis of the whole record the verdict

and judgment is contrary to the manifest weight of the evidence and that the judgment should be reversed on that ground.

For the seventh assignment of error appellant contends the court erred in giving before argument special instruction No. 4 requested by the plaintiff. This instruction reads as follows: "I charge you as a matter of law that if Henry T. Fink at the time of the accident was doing something he was authorized to do, which may be fairly inferred or implied from the nature of his employment and the duties incident to it, he may be said to have been in the course of his employment. Or it may be stated in this way: Was Henry T. Fink, at the time of the accident, doing an act in furtherance of Elmer Lackner's business, which he was expressly or impliedly authorized to do?" While we do not approve of the court giving a special instruction in the form of a question, we do not believe that the statement of the court in the form of a question constituted prejudicial error. The first part of the charge was proper. This charge in its entirety is approved in Weygandt's Ohio Charges, Second Edition, Section 821 B.

Appellant for his eighth assignment of error claims the court erred in refusing to give special instruction before argument requested by the defendant, which reads as follows: "I charge you, as a matter of law, that to maintain an action for negligence, the negligence complained of must be the direct and proximate cause of the injuries inflicted. I further charge you that proximate cause in the law of negligence is such a cause as operates to produce particular consequences without the intervention of an independent, unforeseen cause, without which the injuries would not have occurred." In our opinion this was a correct statement of the law. See Vol. 29 O. Jur. page 478, Section 64. In Baltimore and Ohio S. W. Ry. Co. v. Moloney, Admrx., 7 C. C. N. S. 437, a charge in the identical language was approved. Counsel for the appellee contends that the charge was properly refused since it did not attempt to define intervening cause and make the proper application. A special charge is not intended to cover every principle of or all the law of the case. Hunter v. Brumby, 131 Oh St 443, 3 N. E. (2d) 353; Makranczy v. Gelfand, Admr., 109 Oh St 325, 338, 142 N. E. 688; Swing v. Rose, 75 Oh St 355, 369, 79 N. E. 757; Curlis v. Brown, 9 Oh Ap 19, 22; see Vol. 39 O. Jur. page 1034, Section 315. In this charge the court only attempted to define proximate cause. Since the charge was a correct statement of the law the

refusal of the court to give it constituted reversible error.

We find no error committed in refusing to withdraw from the jury allegations contained in plaintiff's petition regarding the speed of defendant's automobile as claimed in his ninth assignment of error, since there was some evidence introduced from which a reasonable inference may be drawn. Whether the speed of defendant's automobile was greater than was reasonable or proper under the circumstances was a question to be submitted to the jury. Swaboda v. Brown, 129 Oh St 512, 196 N. E. 274. There was no issue made on the last clear chance either in the pleadings or evidence and no charge given with reference thereto.

We find no prejudicial error in the general charge as claimed by appellant in his tenth assignment of error.

Counsel for the appellant for his fourteenth assignment of error claims that other errors of law occurred at the trial, but no other errors are pointed out or discussed by appellant in his brief, and the Court finds no other errors existing.

The Court finds that reversible error was committed in refusing to give special instruction before argument requested by defendant, and that the verdict and judgment are against the manifest weight of the evidence. Such error standing alone would require the case to be remanded for new trial. But on the determinative issue of agency reversible error was also committed in overruling appellant's motion for directed verdict at the close of all the testimony, and in overruling appellant's motion for judgment non obstante veredicto. Such errors are based on a failure of proof on a vital issue in the case and as a matter of law the defendant was entitled to judgment in his favor. In such case the reviewing Court may enter the proper judgment. Accordingly, judgment is entered for defendant.

MILLER, PJ, and HORNBECK, J, concur.

### ON MOTION FOR REHEARING

No. 2125. Decided March 8, 1951.

### OPINION

By WISEMAN, J:

Submitted on motion for rehearing. There is no rule controlling applications for rehearing but this Court has followed the practice of considering such applications if seasonably filed and where the questions raised merit consideration.

Plaintiff-appellee contends that a presumption of agency arose by reason of the fact that the automobile driven by Fink at the time of the collision carried dealer's license plates of the defendant and that therefore a jury question was presented. In support of this proposition plaintiff-appellee cites **Fredericks v. B. L. Williams Co., 68 Oh Ap 217,** 40 N. E. (2d) 162, the second syllabus of which is as follows:

"The presence of an automobile dealer's license plates on an automobile being driven by the sales manager of such dealer creates a rebuttable presumption that the automobile is being driven under the authority of and upon the business of the dealer."

On page 223 the court cites an unreported case of Harten-Brooks Co. v. Gayer (Sixth Appellate District) supporting this proposition. The court also cites Vols: 1-2 Huddy on Automobiles (9 Ed.), 394, Section 180, to the effect that the rule stated above is the general rule. An examination of Huddy does not support the claim that the rule stated is regarded as the general rule. On page 224 the court states that: "In Ohio, the question of agency such as here presented must be governed by the rule of respondeat superior." The court then concludes:

"Under Ohio statutes and decisions and in most other jurisdictions, the most that can be said under the facts here shown is that a rebuttable presumption arose that Cozad was operating the car owned by the company and operating it on company business; and that the evidence offered in rebutting the presumption thus arising presented a jury question. Ball v. Hail, 196 Ark., 491, 118 S. W. (2d), 668."

In the Fredericks case the ownership of the automobile was in dispute. Evidence as to dealer's license plates was relevant in establishing ownership. The presumption of agency could only spring from the fact of ownership. In the Fredericks case the court held that the fact of the use of dealer's license plates raised a rebuttable presumption. Both in this opinion and in the original opinion this Court recognizes this proposition of law. However, in the instant case ownership of the automobile was not in dispute. The defendant admitted ownership. The evidence showing that the automobile involved in the collision had upon it dealer's license plates of the defendant loses some of its probative effect. In our principal opinion we discussed the inferences which may be drawn from the fact of ownership of the automobile and the effect of the rebutting evidence. We conclude that on the basis of the whole record reasonable minds

could not come to different conclusions with respect to the issue of agency.

Defendant's liability rests upon the application of the rule of respondeat superior. The rule of respondeat superior arises out of the relationship of the parties—the relationship of master and servant or of principal and agent. In order to permit recovery it must be shown that the relation between the defendant and Fink was that of master and servant or of principal and agent at the time of the collision. The test of a master's liability is not whether a given act was done during the existence of the servant's employment, but whether such act was done by the servant while engaged in the service of and while acting for the master in the prosecution of the master's business. **Vol. 26, O. Jur., pp 620-628.**

In the Fredericks case the court cites in support of the proposition adhered to the case of Ball v. Hail, 196 Ark. 491, 118 S. W. (2d) 668. That case did not involve the use of dealer's license plates. It is authority for the proposition that a rebuttable presumption arose from the fact that the salesman was driving the dealer's automobile at the time of the accident and that the salesman was acting for the dealer. The court held that where the only rebutting testimony on the subject was given by the dealer and the salesman the question whether the salesman was acting within the scope of his employment at the time of the accident was a jury question. The court in that case referred to Mullins v. Ritchie Grocer Co., 183 Ark. 218, 35 S. W. (2d) 1010, among other cases, in support of this proposition. That case is authority for the proposition that "where evidence refuting presumption that employee was acting within employment when driving employer's automobile is contradicted, question is for jury, but, where uncontradicted, question is for court." That case lays down a proposition of law which is in accord with our principal opinion. In a later Arkansas case, Brooks v. Hale Chevrolet Co., Inc., 198 Ark. 17, 127 S. W. (2d) 135, the court, on page 138, held:

"(2) It is true that if an automobile causing an accident belongs to the defendant and is being operated at the time of the accident by one of the regular employees of the defendant, there is a reasonable inference that at such time the employee was acting within the scope of his employment and in furtherance of the master's business.

"But this is only a prima facie presumption or inference —a presumption or inference deducible from the naked facts

of physical ownership, contract of employment, and permissive or directed operation.

"(3) When, as in the instant case, it is shown by undisputed evidence that five young people met at half past ten o'clock on Saturday night, drove from one to two hours without important purpose, then directed their course to a night club and were well on their way to that objective when the accident occurred, presumption of pursuit of the master's business must give way to the obvious facts."

In Ford and Son Sanitary Co. v. Ransom, 210 S. W. (2d) 508, (decided by the Supreme Court of Arkansas, April 26, 1948) the court discusses the Mullins case and on page 509 again lays down the proposition: "The inference or presumption of fact, however, may be refuted or overcome by evidence adduced by the defendant during the trial. Where the evidence on this point is contradictory, the question is one for the jury. Where the facts are undisputed and uncontradicted it becomes a question for the court."

The question here presented is discussed in Vol. 5 A. L. R. (2d series) beginning at page 199. The text is as follows:

"That the presumption or the inference of an owner's consent to another's operation of his automobile, or the agency of such operator, arising from proof of ownership, or proof of ownership coupled with proof that the driver was in the general employment of the owner, is rebuttable and will be overcome by proper countervailing evidence, is universally held or conceded.

\* \* \* \*

"The great weight of authority recognizes that the presumption from proof of ownership of an automobile alone, or coupled with proof that the driver was in the general employment of the owner, that at the time of the accident the car was being driven by the driver in the business of the owner within the scope of the driver's employment, may and will be overcome as a matter of law and the plaintiff's prima facie case will fail, with the procedural consequence of a directed verdict or binding instructions for the defendant, or a judgment non obstante veredicto for the defendant, or a judgment of nonsuit against the plaintiff, upon clear, direct, undisputed, positive, convincing, uncontroverted, unequivocal, and credible, and, according to some cases, substantial, countervailing evidence showing without contradiction, improbability, and with certainty not susceptible of more than one inference by reasonable men, that the drver was not in the employ of the owner **or that he was not at the time of the accident**

acting in the business of the owner or within the scope of his employment, but in his own business or for his own pleasure having no connection with the business of the owner; or that the automobile was not in the possession of the owner or his servant, but in the possession of someone else, not the servant of the owner, and the circumstances do not support a reasonable inference to the contrary." (Emphasis ours.)

It is contended in this case by the plaintiff-appellee that the testimony given by the defendant and Fink, although uncontradicted and undisputed, was not of sufficient weight to overcome the presumption of agency which arose by reason of the fact that the defendant was the owner of the automobile involved in the collision. In Vol. 5, A. L. R. (2d Series) page 203, we find this statement:

"There is some conflict in the decisions as to the degree and character of proof necessary to refute or overcome such presumption. By some authorities it is held that the presumption disappears when met by positive proof or substantial proof or by evidence which the jury has the right to believe or by the uncontradicted testimony of the defendant. Others hold that the presumption is not overcome by the testimony of the defendant alone or by the testimony of interested witnesses or by evidence which the jury has the right to disbelieve. The authorities are, however, in almost complete agreement that the presumption is conclusively overcome by clear, positive, and undisputed evidence."

This was the view taken by this court in its principal opinion. This Court, in **Arthurs v. Citizens' Coal Co., 37 Abs 438, 47 N. E. (2d) 654**, held:

"The burden of proof remains upon plaintiff at all times, and where the defendant presents clear and conclusive testimony to the contrary and plaintiff goes no farther, the latter must fail in his proof."

The Court, on page 441, states:

"The strength of the prima facie rule necessarily depends on the circumstances and evidence in each particular case. * * *"

"It disappears when surrounding circumstances are such that its recognition is unreasonable. * * *."

"And if so overcome by proof that the automobile was not in the owner's possession or that of his servant, or was not being used by the servant within the scope of his employment, the defendant is entitled to a directed verdict in his favor. * * *."

The Court, on page 441, concludes as follows:

"So the fact that, from the ownership of an automobile being operated upon the highway, an inference arises that it was being operated by or on behalf of the owner of the car, and under circumstances which would render him liable for injuries caused by it, does not require the court to submit the question of the owner's liability to the jury, if there is undisputed and uncontroverted evidence that at the time of the injury the driver of the car was not engaged in the employer's business."

We also refer to a most exhaustive opinion on this whole question by the Supreme Court of the State of Washington in 1942 under the title of Bradley v. S. L. Savidge, Inc., 123 P. (2d) 780. The eleventh paragraph of the syllabus is as follows:

"The presumption that driver was agent of owner of automobile involved in collision, and was acting within scope of his authority, can be overcome by competent evidence from either interested or disinterested witnesses, provided their testimony is uncontradicted, unimpeached, clear and convincing, in which event the presumption disappears entirely, casting on plaintiff the burden of establishing by preponderance of the evidence the fact that, at time of accident, driver of automobile was agent of defendant and was acting within scope of his authority, and if plaintiff failed in such respect, the trial court is required, on motion of defendant, to direct verdict in defendant's favor."

In the opinion the court reviews innumerable opinions from courts of almost all the States in the Union, and cases arising in the Federal jurisdiction. The only Ohio case cited by the court in support of the proposition therein announced is **White Oak Coal Co. v. Rivoux, 88 Oh St 18**, 102 N. E. 302, 46 L. R. A. N. S. 1091, Ann. Cas. 1914 C., 1082. On page 795 the court concludes:

"After a careful study of our cases and those from other jurisdictions to which we have called attention, we conclude that there is no good reason for adhering to the rule that the presumption in cases of this nature may only be overcome by disinterested testimony, but every good reason is demonstrated in the authorities cited that cases of this character should be subject to the same rules governing other presumptions or inferences of fact.

"Litigants are entitled to have their cases decided upon the evidence presented in accordance with general rules. A litigant should not be penalized because the truth comes from

himself or from his employees. Every witness is presumed to tell the truth and his evidence should be accorded that presumption."

The court on page 795 departs from former rulings and holds:

"Departing, however, from the rule as heretofore declared in a number of our own cases, to the effect that such presumption may be overcome only by disinterested testimony, and following what we conceive to be the correct rule as declared by the great weight of authority, including any decisions of this court, we now hold that the presumption may be overcome by competent evidence from either interested or disinterested witnesses, provided that their testimony is uncontradicted, unimpeached, clear and convincing. When evidence of that degree and character is submitted by the defendant, the presumption disappears entirely from the case, casting upon the plaintiff the burden of producing competent evidence to meet the evidence of the defendant, and of establishing by preponderance of the evidence the fact that, at the time of the accident, the driver of the offending automobile was the agent of the owner and was acting within the scope of his authority. If the plaintiff fails in that respect, the court is required, upon motion of the defendant, to direct a verdict in the latter's favor. The pronouncement of this rule requires and results in the overruling of those cases, hereinbefore cited, which have proceeded on a contrary view."

We adhere to the rule laid down in the principal opinion that the evidence introduced by the defendant on the question of agency was sufficient to overcome the presumption which arose by reason of defendant's ownership of the automobile involved in the collision, and that on the state of the whole record reasonable minds could not arrive at different conclusions on the issue of agency. The trial court should have sustained the motion to direct the verdict in favor of the defendant.

Application for rehearing overruled.

HORNBECK, PJ, and MILLER, J, concur.

## ON MOTION FOR AN ORDER

No. 2125. Decided March 22, 1951.

### OPINION

By THE COURT:

Submitted on motion of defendant-appellant for an order releasing the supersedeas bond heretofore filed.

The supersedeas bond filed to stay execution under the provisions of §§12223-9 and 12223-14 GC, is effective until all remedies of the adverse party are exhausted and the appeal is finally determined.

This Court, in a journal entry filed March 17, 1951, reversed a judgment in favor of plaintiff-appellee. The appellee may secure a review of the judgment by the Supreme Court. If this Court should release the bond at this stage of the proceedings and if the Supreme Court should reverse the judgment of this Court, the appellee would then be without remedy on the bond. Until there is a "final determination" of the rights of the parties in this appeal the bond will not be released.

Motion overruled.

HORNBECK, PJ, WISEMAN and MILLER, JJ, concur.